# Bowling & Boucher *vs* Winslow's Adm'r.   CHANCERY.

## ERROR TO THE MASON CIRCUIT COURT.

### *Husband and wife.   Frauds.*                    *Case* 11.

CHIEF JUSTICE EWING delivered the opinion of the Court.          *Sept.* 16.

NANCY H. WATERS died in 1836, leaving, among oth-   Case stated.
er things, several slaves. The children of James Jones,
dec'd., and Pamela Bowling and Elizabeth Boucher,
were her heirs, and as such, entitled to the distribution
of her estate, each one third. Benjamin S. Hieatt ad-
ministered on her estate, and taking possession of the
slaves, hired them out until the latter part of the year
1839, when the children of Jones filed their bill for a
sale of the slaves and a small tract of land, with a view
to a division, and a settlement of the estate. Mrs. Bou-
cher and Bowling and their husbands, filed their answers,
consenting to a sale, and though they did not specifically
set up that Mrs. Boucher's undivided interest had been
previously sold to Mrs. Bowling; under her name signed
to the answer, are the following words: "interest sold."
A decree was rendered for a sale of the slaves and land,
and a Commissioner appointed to make sale, who sold
the slaves for upwards of $2700, upon a credit, and took
the bonds of the purchasers, and made report to Court.
But after the sale, but before the report was made, Thos.
Winslow filed his bill, setting up a demand against
George Boucher, the husband of Mrs. Boucher, as his sure-
ty, praying that the share of Mrs. Boucher might be sub-
jected to its payment. Mrs. Bowling answered, alledging
that she had purchased the interest of Mrs. Boucher,
shortly after the death of Mrs. Waters, and exhibited a
bill of sale, bearing date in December, 1836, signed by
Mrs. Boucher and her husband, George Boucher, as evi-
dence thereof. Mrs. Boucher, by leave of the Court,
filed an amended answer in the suit of Jones' heirs for a
division, alledging, that she and her husband sold her in-
terest in the slaves, to Mrs. Bowling, for $675, and re-

BOWLING & BOU-
CHER
*vs*
WINSLOW'S ADR.

ceived the pay, and disclaiming all title, and praying that her share of the slaves might be alotted to Mrs. Bowling. Thos. Winslow, by an amendment to his bill, charged that the sale was fraudulent, and prayed that the interest of Mrs. Boucher in the slaves, or their proceeds, might be subjected to the payment of his debt against George Boucher, her husband. After the case was argued the first time, but before it was decided, Mrs. Boucher offered her answer, in which she repeats that she and her husband had sold her interest in the slaves fairly, and without an intention to hinder and delay creditors, but with a view to raise money to live on, her husband being insolvent, and they both being old and poor, and unable to provide the means of support. She charges that the whole of her share of the slaves or their proceeds, are not more than sufficient for her support, and in case the sale is not sustained, she prays that her estate may not be taken to pay her unfortunate husband's debts, but that the whole may be set apart for her maintenance. The Circuit Court rejected the answer, but permitted it to be filed among the papers, and copied into the record for this Court, and the cause being re-argued, the Circuit Court sustained the bill, and decreed that the proceeds of the sale be paid over to the complainant's administrator, (he having died) ; and Mrs. Bowling and Boucher have brought the case to this Court.

If the slaves, or their proceeds, were subject to the complainant's debt, the fraud in the sale charged, is very inconclusively and unsatisfactorily made out.

But it is clear, that the husband of Mrs. Boucher never had the possession of the slaves, or any of them, in his own right, or in the right of his wife. The *legal title* and entire control of them all, were in and had continued with the administrator of Mrs. Nancy H. Waters, from his appointment up to the sale for distribution. He had hired two of them to the husband of Mrs. Boucher for one year, and he had held the possession of them on hire only under the administrator, and was accountable to him for their hire. They were therefore, at no time subject to the complainant's or any other creditors execution *at law*, for Boucher's debts. Neither could they have

Where the husband has never reduced to his possession, property (slaves) which has descended to the wife, during the coverture, so that they would be subject to execution for his debts, the Chancellor will not subject them, regardless of the wife's paramount equity to a maintenance.

been reached in a Court of Equity, or subjected in that tribunal, to the payment of his debts, regardless of the wife's prior and permanent equity to a maintenance out of them, as her inheritance. And considering the entire insolvency of the husband, and his inability to maintain her, and the abject poverty of both, it would, we think, require the whole of her interest in the slaves to support her.

The wife's equity to the whole interest, was therefore prior and superior to the claims of any general creditor. As they could not be reached or subjected to the payment of his debts, in either tribunal, they could be guilty of no fraud against creditors, in selling or conveying them away, nor could such conveyance be deemed a hindrance, delay or obstruction to creditors.

Fraud against creditors consists in conveying or assigning to others in secret trust or otherwise, in bad faith, property or estate that is subject to the payment of their debts, and not in conveying that which is not subject, nor could be reached or made liable in any legal tribunal.

It is true that it has been determined that the sale or assignment, by the husband, of the property of the wife, not reduced to possession, is the exercise of dominion over the estate which operates as a constructive reduction to possession, which in legal effect, is tantamount to actual possession. Yet it was determined by this Court, in the case of *Thomas, &c.* vs *Kennedy*, (4 *B. Monroe*, 237,) that such constructive reduction to possession, had the effect only to free the estate assigned from the wife's *legal* right of survivorship, and not from her equity to have a provision out of it for her comfortable maintenance and support, whenever resort to a Court of Equity was necessary to obtain the actual possession, or the subject was brought under the control of such Court.

Cases are numerous where the assignee of the specific thing thus conditioned, has been compelled to yield to the wife's paramount equity in that tribunal. Indeed, the authorities are abundant, that the assignee equally with the husband, is compelled to yield this equity, and neither can obtain the aid of a Court of Equity upon other terms. If an assignee of the specific estate thus condi-

Bowling & Boucher
*vs*
Winslow's Adr.

Though property descended to the wife be placed in secret trust by the husband to provide a maintenance for the wife, a creditor cannot reach it if the wife, from the inabilty of the husband, stand in need of such maintenance. It is but doing what was a paramount duty, and what the Chancellor would have done.

tioned, cannot overreach the wife's equity, much less can a general creditor of the husband do so.

Moreover, the àct by which the slaves are claimed as subject to the complainant's demand, is the act by which the title passed to the assignee. If the assignment was valid, the title is gone from the creditor; if invalid or held in secret trust, the presumption is, that it is held in trust for the wife, whose inheritance it was, and if so held, it is placed in that precise condition which a Court of Equity would have placed it, had it been brought under its control, and if so, that has been done which should have been done, and a Court of Equity will not undo it. In the absence of all proof establishing the fact, the presumption cannot be indulged, that an assignment which, as charged, was dictated by a desire and intention to place the property out of the reach of the creditors of the husband, and joined in by the wife, would pass it in secret trust for *his* use alone, and the more especially as he was insolvent, and could not hold either a legal or equitable interest that might not be made liable to the payment of his debts. But if held fraudulently or in secret trust for either or both, a Court of Equity will not divest the title, or overlook the prior and superior equity of the wife, in affording relief to the creditors of the husband. And as the whole of the wife's interest in the slaves, or their proceeds, was not more, as we think, than sufficient for the reasonable support of the wife, the complainant's bill should have been dismissed.

It is the opinion of the Court, therefore, that the decree of the Circuit Court be reversed, and the cause remanded, that the complainant's bill as to the slaves, or their proceeds, be dismissed, with costs.

*Hord* for plaintiffs: *Payne & Waller* for defendant.