CASE 20—PETITION ORDINARY—JUNE 11.

# Louisville and Nashville Railroad Company v. Brooks' Adm'x.

APPEAL FROM MARION CIRCUIT COURT.

1. WILLFUL NEGLECT—PUNITIVE DAMAGES.—In an action under section 3 of chapter 57, General Statutes, for willful neglect, punitive damages may or may not be given, in the discretion of the jury. It was, therefore, error in this case to instruct the jury that they "*should*" give punitive damages, if they found willful neglect.

2. RESPONDEAT SUPERIOR.—The rule that, where one of two fellow-servants is injured by the negligence of the other, the common employer is not liable therefor, does not apply in cases of willful neglect, if the two servants were not co-equals.

In this case it is held that the engineer and a brakeman on the same train were not co-equals, and that the railroad company is liable for the death of the latter, if caused by the willful neglect of the former.

3. EXCESSIVE VERDICT.—In an action to recover damages for the loss of the life of a brakeman on a train caused by the willful neglect of the railroad company, a verdict for $10,000 is not so excessive as to indicate that the jury was influenced by passion or prejudice.

WM. LINDSAY FOR APPELLANT.

1. In actions under section 3 of chapter 57, General Statutes, for willful neglect, the jury may or may not, in their discretion, give *punitive* damages, and it was error in this case to instruct the jury that they "*should*" give punitive damages, if they should find willful neglect. (General Statutes, chapter 57, section 3; Act 1854, 2 Stanton's Rev. Stats., page 510; L. C. & L. R. R. Co. v. Case's Adm'r, 9 Bush, 783; Chiles v. Drake, 2 Met., 152; M. & L. R. R. Co. v. Herrick, 13 Bush; Sedgwick on Measure of Damages, 7th ed., vol. 1, page 53; Bouvier's Law Dictionary, vol. 1, page 561; Kountz v. Brown, 10 B. Mon., 586.)

2. The verdict is not supported by the evidence. The killing of a brakeman on a railroad train, while he is engaged in the discharge of his duties as such, does not raise the presumption of negligence on the part of the officers having the general management of the train. (Sullivan's Adm'r v. L. & P. Bridge Co., 9 Bush, 88, 89; Pierce on Railways, page 382; Sherman & Redfield on Negligence, section 99; Ill. Central R. R. Co. v. Houck's Adm'r, 72 Ill., 286; Central R. R. & B. Co. v. Kelly, 58 Ga., 114; M. & O. R. R. Co.

Louisville and Nashville Railroad Company v. Brooks' Adm'x.

v. Thomas, 42 Ala., 672; L. W. & W. R. R. Co. v. Moore, 72 Ill.,. 217; Kansas Pacific R. R. Co. v. Salmon, 11 Kansas, 83.)

3. In such a case as this, where contributory neglect can not be relied on as a defense, a verdict ought not to be upheld merely because there was *some* evidence before the jury to support it. (Baulec v.. N. Y. & H. R. R. Co., 59 N. Y., 366; Cotton v. Wood, 8 C. B.,. N. S., 568; Avery v. Bowden, 6 E. & B., 973; McMahon v. Leonard, 6 H. of L. Cases, 970, 993.)

4. The engineer and brakeman were in a common employment, the one: not superior or subordinate to the other, and, therefore, the common employer is not liable for an injury to one by the neglect of' the other. (L. C. & L. R. R. Co. v. Cavens' Adm'r, 9 Bush, 565,. 566; Doyle v. Swift Iron and Steel Works, MS. Op., May 24,, 1883; Randall v. B. & O. R. R. Co., 109 U. S., 478.)

ROUNTREE & LISLE ON SAME SIDE.

1. It was error to instruct the jury that they "*should*" find punitive: damages, that being a matter in their discretion.

2. Punitive damages are composed of two elements—*actual* compensation, and compensation for the manner in which the injury was inflicted; therefore, the measure of damages should have been defined to the jury. (Chiles v. Drake, 2 Met., 151; Day v. Woodworth, 13 Howard, 371; Case v. L. C. & L. R. R. Co., 9 Bush, 736;. L. C. & L. R. R. Co. v. Mahoney's Adm'r, 7 Bush, 238.)

3. Contributory neglect may be relied upon as a defense in actions. under the statute for willful neglect. (Sullivan's Adm'r v. Louisville Bridge Co., 9 Bush, 88; Lou. & Port. Canal Co. v. Murphy's: Adm'r, 9 Bush, 530; Digby v. Kenton Iron Co., 8 Bush, 168;. Board of Improvement v. Scearce, 2 Duvall, 579.)

4. The verdict is not supported by the evidence. Actions like this are highly penal in their character, and the plaintiff can not make out his case by mere inferences or guesses. He is required to show the acts willful in their character, and the death the necessary result thereof. (City of Lexington v. Lewis' Adm'x, 10 Bush, 680; Day v. Toledo, etc., Railway Co., 42 Mich., 523; Phil. and Reading R. R. Co. v. Schertle, Thompson's American and English R. R. Cases, vol. 2, page 158; Board of Int. Imp. v. Scearce, 2 Duv., 577; Jacobs' Adm'r v. L. & N. R. R. Co., 10 Bush, 272.)

5. The courts readily supervise the verdicts of juries in cases like this. (L. & Port. R. R. Co. v. Smith, 2 Duv., 557; L. & N. R. R. Co. v. Fox, 11 Bush, 516.)

6. It is settled that passenger carriers are not insurers of the safety of passengers. (Ky. Cent. R. R. Co. v. Dils, 4 Bush, 593; L. & N. R. R. Co. v. Sickings, 5 Bush, 1; 2 Redfield on Railways, page 240; Shoemaker v. Kingsbury, 12 Wallace, 369.) Certainly, then,. they are not insurers of their employes.

Louisville and Nashville Railroad Company v. Brooks' Adm'x.

TEMPLE BODLEY FOR APPELLEE.

1. The statute under which the recovery was had in this case is not unconstitutional because it *requires* punitive damages to be awarded. (Chiles v. Drake, 2 Met., 151.)

2. Contributory neglect is affirmative matter to be affirmatively pleaded and proved by the defendant, and is not presumed. (Louisville and Portland Canal Co. v. Murphy, 9 Bush, 529; P. & M. R. R. Co. v. Hoehl, 12 Bush, 41; K. C. R. R. Co. v. Thomas, 79 Ky., 160.)

3. Only willful contributory neglect could exonerate the defendant. (L. & N. R. R. Co. v. McCoy, 5 Ky. Law Rep., 405; Claxton v. Lexington and Big Sandy R. R. Co., 13 Bush, 642.)

4. The statute imperatively requires the jury to give punitive damages in cases of this character. It expressly says that the plaintiff "shall have *the right* to recover punitive damages."

5. The rule *respondeat superior* applies in cases of willful neglect resulting in death, although the fellow-servants were co-equals. (L. & N. R. R. Co. v. Filbern's Adm'x, 6 Bush, 579.) This case is not discredited by the case of L. C. & L. R. R. Co. v. Cavens' Adm'r, 9 Bush, 565.)

6. The evidence shows that the death of the plaintiff's intestate resulted from the willful neglect of the defendant's agents.

J. PROCTOR KNOTT AND S. B. BERRY ON SAME SIDE.

JUDGE LEWIS DELIVERED THE OPINION OF THE COURT.

This is an action by appellee, personal representative, to recover damages for the destruction of the life of Charles Brooks, by the alleged willful neglect of appellant's agents and servants; and judgment having, in accordance with the verdict of the jury, been rendered for $10,000, a reversal is asked upon three grounds:

1st. That the verdict is not sustained by the evidence, and is contrary to law.

2d. The damages awarded by the jury are excessive, appearing to have been given under the influence of passion or prejudice.

3d. The court erred in giving the instruction asked for by appellee.

The deceased lost his life at Lebanon while in the employment of appellant as brakeman on a freight train, consisting of twenty-four loaded cars, which had arrived there after night-fall, an hour or more behind time, on the way to Louisville.

The train was stopped on the main track near the depot, and the engine, attached to some of the cars, was moved to the side-track, leading to the depot, for the purpose of leaving a car and taking another, and also to obtain a supply of sand, the other portion of the train having been cut off and left on the main track. But after reaching the side-track the engineer discovered that it was impossible for the engine to push the number of cars he had attached, on the wet rails, up the ascending grade, and was, consequently, compelled to return to the main track and leave some of them. After the necessary transfer of cars was made and sand obtained from the depot, the train was again united, and left for Louisville; and some time afterwards Brooks was discovered lying near the main track, dead.

It was a dark, rainy night, and no witness saw the deceased killed; nor did those connected with the train know it until informed by a telegram sent to the conductor, at a station some distance from Lebanon. Whether his life was lost by the alleged willful neglect must, therefore, from necessity, be determined by the attendant facts and circumstances proved. And it seems to us evident, that if it was so destroyed, it must have occurred while he was in the discharge of his duty as brakeman, coupling or attempting to couple the two parts of the train,

and resulted from the great violence with which they were made to come in contact, or the unnecessary and reckless continuance of the driving force of the engine after they had come together. No other theory is suggested in behalf of appellee, nor is there any evidence showing his life was destroyed in any other way that could render appellant liable.

It is placed beyond question that he was run over by the train. A broken lantern, evidently used by him, was found near the track; sixty feet or more south of it was his body, which had been dragged across thirty-two cross-ties; and between the two, but nearest the lantern, was his hat.

At the place where the trail of his body on the cross-ties began was blood, and two witnesses saw indentations there, just inside the north rail—one, as if made by a boot-heel wrenched in the ground, and the other, an impression of a person's knee. And this was about where the train was first cut, and where it was the duty of the deceased, as rear brakeman, to be, in order to couple the cars, if necessary for any one to do so. There is, however, evidence tending to show that the coupling-pin was fixed in such way, by the conductor, as to drop into its place, coupling the cars, when they came together, without human aid. And from that fact the inference is attempted to be drawn, that there being no necessity for the deceased to be there, he was not between the cars for the purpose of coupling, but was there by his own negligence or for some different purpose. But the train was cut in two places on the main track, and it does not,

clearly appear at which one of them the pin was adjusted; nor, if it was at the place the deceased was killed, that he was informed of it by the conductor.

In our opinion it can be reasonably inferred that the deceased was, at the time, not only at the place for the purpose of performing his hazardous duty of coupling the front to rear portion of the train, but was on the track between the two cars to be coupled, actually so engaged; and, as he had his lantern with him, the conductor, as well as the engineer, might have ascertained before backing the train, as it was their duty to do, whether he was at the place in the discharge of that duty or not.

From the evidence, it appears that the engineer was, on that occasion, in an ill-humor; that there was such unusual noise and confusion while the train was there, as to awaken persons in the neighborhood of the depot and cause comment; one witness, experienced in operating trains, testifying that it was reckless switching; another, that he never before heard such jamming and banging of cars; and a third, that there was a great crash of cars coming together, two or three minutes before the train left. There is, however, evidence tending to show that it was impossible for the part of the train to which the engine was attached to strike the rear part with such force as to knock it sixty feet, without breaking the cars. Nevertheless, it is an undisputed fact that twelve or more loaded cars were either knocked or pushed back on wet rails, up an ascending grade, that distance or more; and

that the deceased was prostrated and dragged, in the manner mentioned, though he was an experienced, active and vigilant brakeman.

As the case is presented, the verdict is not, in our opinion, so palpably against the weight of evidence as to authorize a reversal on that account.

But it is contended for appellant, that, as the life of the deceased was destroyed by the negligence of the engineer of the train, if any one, no recovery can be had in this action; because, being employés in the same service, and neither being superior or subordinate to the other in its performance, they must be regarded as, at the time, substantially agents of each other; and, consequently, appellant, the common employer, can not be made legally answerable for the death of one by the negligence of the other.

Waiving inquiry as to how far, if at all, the conductor, who had control of the train, is responsible, we will consider the question as raised by counsel.

Unquestionably, when a person is employed in the service of another, he undertakes to risk all the ordinary perils incident thereto; and, as between a number of persons employed in the same service, "there is an implied undertaking to risk all the contingencies which the ordinary skill or care of each other, in his line of service, could not avert. But this implied undertaking between the company and its employes in the same class of service does not exonerate the company from liability for damage resulting to one of such agents from extraordinary or gross negligence of another." (L. &

N. R. R. Co. v. Robinson, 4 Bush, 507.) This rule. had, in the Collins case, 2 Duvall, 118, where the authorities were referred to and the subject fully considered, been announced as in accordance with principle, analogy and policy; and it was adhered to and approved, not only in the Robinson, but also in the Filbern case, 6 Bush, 574.

The question before the court, in the case of L. C. & L. Railroad Co. v. Cavens' Adm'r, 9 Bush, 559, referred to by counsel, was as to the liability of the company for the destruction of the life of an engineer on one of its trains, by a collision, occurring through the negligence of the conductor of another train; and the precise question presented in this did not arise in that case. But we do not perceive any inconsistency between the rule by which that case was decided and the one adopted and applied in the previous cases referred to. In the Cavens case is. this language: "Is it not more reasonable to make the company, whose duty it is to employ careful and skilled agents for the conduct of its business, and when it alone controls such agents, liable for such neglect of duty, than to adjudge that a mere subordinate, who has no means of knowing the qualification of the agent for such position, or voice in his selection as such, and without means or power to resist or control his action, is without remedy, except as against the party committing the negligent act?"

That question is pertinent in this case, and can, according to the uniform ruling by this court, be answered but one way.

The engineer and brakeman, on the same train, are not, as assumed by counsel, co-equals; for the latter has no right to resist the former, when acting in his appointed sphere, but is bound to implicitly obey his signals; and, as between them, there is no reason or consideration of policy to imply, on the part of the brakeman, an undertaking to look to the engineer alone, and not to the company, for security against his willful neglect, even conceding such should be the rule as between co-equals. In our opinion, therefore, appellee has a right to maintain this action for the cause stated in his petition.

2d. No limit to the amount of damages which may be recovered in cases of this kind is definitely fixed by law; nor, under the Civil Code, can the court trying the case grant a new trial, nor this court reverse, upon the ground of excessive damages, unless it appear they were given by the jury under the influence of passion or prejudice; and there being no evidence the jury were so influenced in this case, except the large amount of damages awarded, the single inquiry is, whether that fact alone authorizes us to disturb the verdict.

Doubtless it might be reasonably inferred, when the damages are palpably excessive, extravagant and unusual, that the jury was influenced in awarding them by passion or prejudice; and, in such case, it would be the duty of the court to interpose. But having considered and compared with this the cases heretofore considered by this court, involving the same question, we can not say the verdict in this case is relatively excessive or extraordinary; and,

consequently, to set it aside would, in our opinion, be a departure from the course this court has heretofore felt constrained to pursue, and an invasion of the province of the jury it should always hesitate to make.

3d. The instruction of which appellant complains is as follows: "The court instructs the jury, that if they believe, from the evidence, that the life of Chas. Brooks was lost or destroyed by the willful neglect of defendant's servants or agents, engaged in running or managing the train, they should find for the plaintiff such punitive damages as they think proper, not exceeding the amount claimed in the petition."

The objection made to this instruction is, that the court, upon the hypothesis stated, instead of leaving to the discretion of the jury to find or not to find for the plaintiff punitive damages, peremptorily instructed them to so find, allowing discretion only as to the amount.

Whether this instruction is liable to the objection made, depends upon the meaning intended by the Legislature to be given to section 3, chapter 57, General Statutes, already quoted.

It is, however, contended for appellee that the section is mandatory, and in unambiguous terms requires the court to instruct the jury to give punitive damages in every case of loss or destruction of life by willful negligence, without regard to the conduct of the deceased, the relation of the parties, or the circumstances under which it may occur. Of course, if this be so, there is nothing left for court or jury but to obey the law as it is written.

But is such the necessary and only proper meaning that the language used is susceptible of? We think not.

The right to sue for punitive damages, in such cases, is not inevitably followed by a recovery.

The first, the Legislature has the power to give, exists alone in virtue of the statute, and, clearly, can not be called in question. But a recovery, to a great extent, and the amount of recovery altogether, depends upon the merits of each case, as passed upon and determined by the jury, and can not be constitutionally controlled by legislative will. And, as a consequence, while such an instruction as the one in question is calculated to unduly and unfairly influence the jury to increase the damages beyond what they would give if left a discretion, and required to act on their own responsibility, they still may not, being under no compulsion to do so, find more than mere nominal punitive damages, even if the construction of the section contended for be adopted.

It is, therefore, at least a reasonable inference that the Legislature intended simply to give the right to sue for punitive damages, which it had the power to do, leaving the assessment, which is practically beyond legislative control, to be made according to the familiar common law rule adopted and applied in actions for personal injuries by the courts of this State since its organization, which requires the court to instruct the jury to give compensatory damages, and, also, in their discretion, punitive damages, where the injury is the result of willful negligence, malice or oppression.

Such was the construction given to the act of 1854, not materially different from the section under consideration, in Chiles v. Drake, 4 Met., 146, which was the first case before this court under that act; and there has not since been a departure from the views then announced.

In that case the court said: "It is contended that the term punitive damages excludes the idea of damages for compensation; and, consequently, if any recovery can be had under the act, it must be for punitive damages alone, and nothing can be allowed for compensation. This, however, is a mistaken view of the meaning of the statute in authorizing the recovery of punitive damages against the offending party. The damages are allowed as compensation for the loss sustained, but the jury are permitted to give exemplary damages on account of the nature of the injury."

By an act approved January 12, 1866, which is similar to section 6, chapter 1, General Statutes, it is provided that the widow and minor child, or either, of a person killed by the careless, wanton or malicious use of fire-arms, or other deadly weapon, not in self-defense, may have an action against the person who committed the killing for reparation of the injury; and in such action the jury *may* give vindictive damages.

By section 1, chapter 31, Revised Statutes, identical with section 1, chapter 32, General Statutes, it is provided that the widow and minor child of a person killed in a duel, or either of them, may have an action against the surviving principal, the seconds,

;and all others aiding or promoting the duel, or .against any one or more of them, for reparation of the injury, and in which the jury *may* give vindictive damages, for the suppression of the practice of dueling.

The General Statutes is intended to be a harmonious system of laws, operating justly and equally; .and it is the duty of the courts to give such con- .struction to the different parts of the system as will effectuate that object, when it can be done without ·doing violence to the language used and defeating the manifest intention of the Legislature, which may, and in our opinion ought to be done in this ·case.

But if the construction appellee's counsel contends ·for be proper, we have a system so incongruous and .anomalous, that while in an action for the destruc- ·tion of life willfully, as is always the case in a ·duel, or even maliciously, as provided against in section 6, chapter 1, punitive or exemplary damages may or may not, in the discretion of the jury, be .given. In actions like this, where death results from willful neglect, which is merely *quasi* criminal, the court is required to arbitrarily instruct and the jury to find punitive damages, though the servant or .agent, who is not sued, be guilty, and the employer, .against whom the damages are assessed, be entirely without fault.

Such a construction, in our opinion, was not intended by the Legislature, nor is it required by the language used.

It is obvious how the amount of damages might

have been increased by reason of the instruction in: question, as it is manifest that there might be cases. arising under that section in which punitive damages should not be given, and where, if left to the: discretion of the jury, they would not be given. Whether this is such a case, it is not our province: to now decide. ·

It is sufficient that the verdict of the jury has: been rendered under an instruction that should not have been given, and which was calculated to prejudice the rights of appellant.

Wherefore, the judgment is reversed, and cause· remanded for ·further proceedings consistent with. this opinion.