ELIZABETH A. BOSCH, Respondent, v. F. W.
MILLER, Appellant.

Kansas City Court of Appeals, March 29, 1909.

1. **MALICIOUS PROSECUTION: Civil Actions: Probable Cause.**
In this State an action for damages will lie where plaintiff
has been compelled to defend himself against a civil action
of a defamatory nature maliciously brought and maintained
without probable cause, since the recovery of costs does not
reimburse plaintiff for his damages, attorneys' fees and oth-
er incidental expenses.

2. ———: ———: ———: **Definition.** Malice in the prosecution
of a defamatory suit may be inferred from the existence of
want of probable cause, and probable cause is such combination
of facts and proofs as may fairly lead a reasonable mind to the
belief, in the absence of hitherto unknown qualifying or re-
butting evidence, that the prosecution ought to be successful.

3. ———: ———: ———: **Jury.** Where the facts are not in dis-
pute want of probable cause is a question for the court, other-
wise a mixed question of law and fact, and on the facts in the
record the question whether an action instituted to declare a
deed fair upon its face created an express trust for the benefit
of a stranger thereto was maliciously prosecuted, is properly
sent to the jury.

4. ———: ———: **Measure of Damages: Instruction: Punitive
Damages.** An instruction relating to the allowance of punitive
damages is condemned because its direction to assess punitive
damages was mandatory if they believed certain facts, where-
as the assessment of such damages is always left to the dis-
cretion of the jury.

Appeal from Jackson Circuit Court.—*Hon. James H.
Slover,* Judge.

REVERSED AND REMANDED, *nisi.*

*Marley & Swearingen* for appellant.

(1) Plaintiff's testimony not only fails to affirm-
atively show malice and want of probable cause, but
affirmatively shows probable cause. Van Sickle v.
Brown, 68 Mo. 637; Wise v. McNichols, 63 Mo. App.

144; Christian v. Hanna, 58 Mo. App. 46; Grant v. Reinhart, 33 Mo. App. 80; Osborne v. Moore, 12 La. Ann. 714; Mosley v. Yearwood, 48 La. Ann. 337; Davain v. Discalso, 66 Cal. 415; Meyer v. Railroad, 98 Ky. 369; McCullough v. Grishouder, 4 Watts & S. 204; Wilmarth v. Mountford, 4 Wash. C. C. 84; Brown v. Willoughby, 1 Colo. 11; Railway v. Brewer, 78 Md. 405; Baldwin v. Weld, 17 Wend. 224; Ferguson v. Arnow, 142 N. Y. 583; Willard v. Holmes, 142 N. Y. 493; Jordan v. Railroad, 81 Ala. 227. As to presumptions from relationship, see Leavitt v. La Force, 71 Mo. 354. That he acted solely upon advice of counsel is conclusively shown. Warren v. Flood, 72 Mo. App. 205. Taking advice of counsel a good defense. Sappington v. Watson, 50 Mo. 83; Hill v. Palm, 38 Mo. 13; Warren v. Flood, 72 Mo. App. 199; Sharling v. Conway, 75 Mo. 510; Butcher v. Hoffman, 99 Mo. App. 239. (2) The testimony in plaintiff's behalf as to what led to the making of the deed—as to the making of the deed and as to all conversations with Mari Metz or others than defendant was clearly incompetent, it not being shown that defendant was present thereat, or that he was fully advised thereof prior to his bringing his suits. Brennan v. Tracy, 2 Mo. App. 542; King v. Colvin, 11 R. I. 584; Hillebrew v. Carlisle, 97 Ala. 535. (3) The testimony of plaintiff as to her mental worry and mental condition was incompetent as an element of damages and that part of her instructions with reference thereto was erroneous. Because allegations in defendant's petition were privileged. Jones v. Brawnlee, 161 Mo. 258; Yeager v. Bruce, 116 Mo. App. 488; Abbott v. Bank, 20 Wash. 555; Bartlett v. Christhilf, 69 Md. 219; Hunckel v. Voneiff, 69 Md. 180; Maulsby v. Reifsneider, 69 Md. 143; Abbott v. Bank, 175 U. S. 409; Krup v. Corley, 95 Mo. App. 651; Christal v. Craig, 80 Mo. 373; Wood v. Hilbish, 23 Mo. App. 398. (4) The verdict is excessive, both as to actual and punitive damages. Badgley v. St. Louis, 149 Mo. 135.

*Milton Campbell* for respondent.

(1) In Missouri it is settled that actions for malicious prosecution of civil actions instituted without probable cause, can be maintained. Smith v. Burrus, 106 Mo. 94; Brown v. Cape Girardeau, 90 Mo. 377; Brady v. Erwin, 48 Mo. 533; Bishop on Non-Contract Law, sec. 222, and cases cited. (2) Probable cause is any such combination of facts and proofs as may fairly lead the reasonable mind to the belief (and the person relying on it must believe) that, in the absence of hitherto unknown, qualifying, or rebutting evidence, the prosecution, or other suit, ought to be successful. Bishop on Non-Contract Law, sec. 239; Sparling v. Conway, 75 Mo. 510; Butcher v. Hoffman, 99 Mo. App. 239; Stubbs v. Mulholland, 168 Mo. 47; Bishop on Non-Contract Law, sec. 232; Bishop on Non-Contract Law, sec. 233; Wills v. Noyes, 12 Pick. (Mass.) 328; Drey v. Doyle, 99 Mo. 459.

JOHNSON, J.—Action to recover actual and punitive damages for the malicious prosecution of civil suits brought and prosecuted by defendant against plaintiff without probable cause. The trial resulted in a verdict and judgment for plaintiffs for $1,620 actual and $1,630 punitive damages. Defendant appealed.

The first cause of the litigation waged by defendant against plaintiff was a warranty deed executed and delivered to plaintiff by Mari Metz, her grandmother, on the 12th day of March, 1903. The deed recited a consideration of $2,500, and by its terms conveyed to the grantee the fee simple title to residence property in Kansas City owned by the grantor of the value of $2,500. Following the description of the property, this clause appears: "This deed is subject to the charges for the care and subsistence of the grantor, Mari Metz, and such charges and the care of her grandmother, Mari Metz, are assumed by the grantee herein named."

The deed was acknowledged March 13, 1903, and was filed for record four days later. The grantor, who was an aged widow, died intestate in Kansas City in October, 1905. For a number of years preceding her death, she resided on the premises described in the deed with her daughter, Mary Bosch, and the latter's family, including the plaintiff, who was engaged in artistic work and teaching and from her income, which exceeded $100 per month, contributed to the maintenance of the family, including her grandmother. Defendant, who was a son of Mari Metz and an uncle of plaintiff, was married and lived with his family in Kansas City. He was away from home when his mother died but returned in time to attend the funeral. A few days later, he and his wife called on his sister, Mrs. Bosch, to ascertain the condition of his mother's estate. He was referred to plaintiff who informed him that the residence property had been deeded to her. She showed him the deed and a stormy scene ensued. Defendant forcibly expressed his surprise and anger at being thus disinherited by his mother and said the deed was not worth the paper it was written on." He insisted that the property be divided equally between him and his sister, Mrs. Bosch. There is substantial evidence to the effect that he bombarded his niece with hostile questions and observations and that his demeanor was so overbearing and truculent that she became afraid of him. He succeeded in extorting from her the admission that the conveyance, though absolute in form, was made to her as trustee, but she would not admit that her uncle was one of the beneficiaries of that trust and maintained that her grandmother had given her the full right to dispose of the property as she might think best. Defendant then left and went to his lawyer to whom he stated that plaintiff had a deed to the property which was executed and delivered with the understanding that she should hold the property as trustee for the equal benefit of him and his sis

ter.   The lawyer advised defendant to procure from plaintiff a declaration of trust in writing and prepared an instrument of that character.   Armed with this document, defendant returned to plaintiff and endeavored to obtain its execution by her.   She refused on the ground that the instrument did not state the true facts; that her grandmother had not executed the deed with the understanding that plaintiff should be burdened with the execution of an express trust.   The interview was stormy and defendant was abusive but did not offer physical violence.   Finally, to end the scene and out of fear that worse things might ensue, plaintiff signed the following instrument prepared by defendant:

"KANSAS CITY, Mo., October 30, 1905.

"This is to certify that when Mari A. Metz made a deed to me for the property at 3016 East Twelfth street, Kansas City, Mo., she said this deed was not intended to make me the owner of this property but was to put it in my name as trustee."

Plaintiff was not present when her grandmother executed the deed.   A lawyer was called in by Mrs. Metz and in the presence of witnesses, she informed him, of her wishes.   He drew the deed in strict conformity with her instructions and she informed herself of the contents of the instrument before she signed it.   Nothing was said about a trust nor was such subject mentioned when, afterward, the deed was delivered to plaintiff.

Defendant took the statement signed by plaintiff to his lawyer and was advised, in effect, that it did not improve his position.   Defendant testified:   "Q. And what did you say to him?   A.   I said they refused to sign the original yellow slip that he had written (the declaration of trust prepared by the lawyer) and I finally rewrote that and here it is—and he looked at it and he said "that is a question as to whether she

holds it in trust or whether she is the real owner according to the deed. He said, the way it is now she can transfer it to anybody and you will have a fight on your hands. I would advise you to bring a suit merely to prevent her from transferring the property. Q. He advised you to bring a suit merely to prevent her from getting rid of the property? A. Until we could get a compromise. I was still in hopes of it after suit was brought." Defendant's testimony relative to what plaintiff said when he tried to induce her to sign the declaration drawn by the lawyer is as follows: "She said that she was trustee and she would decide whether and when I would get any of that property or my heirs and that she didn't want that inserted until she saw an attorney."

The next step of defendant was to bring suit in the circuit court on December 3, 1905, against plaintiff and her mother to obtain the cancellation of the deed on the ground of fraud in its procurement. The petition in that suit alleged that Mari Metz was eighty-three years old, was weak, and infirm in body and mind and that defendants (plaintiff here) unduly influenced her and by false and fraudulent practices and promises induced her to execute an absolute conveyance of the property under the belief that she was conveying it in trust for the equal benefit of her son (defendant here) and her daughter, Mary Bosch. The characterization in that petition of the conduct of plaintiff and her mother is as vigorous and harsh as one would expect to find in a suit of that nature. No consideration was shown for their good name or feelings. Shortly after bringing that suit, defendant called on plaintiff at her studio. The conversation that ensued thus is stated by plaintiff: "He came up to the studio and asked me what I was going to do about the affair. I told him I didn't intend to do anything—that what he had done, he had put us in court and it would stay there. He said didn't I have enough of court. I said I didn't know

anything about it. He said 'If you sign over to your mother and me, I will drop the whole thing." I said 'Grandma made the deed as she wished to, and to this I will stand. I have no money to fight in court but what I am earning, but if you want to go to court, you can.' He said, 'I have a thousand dollars I will spend for satisfaction,' and he said 'I won't have one lawyer—I will have two or three—I will do all I can to have satisfaction.' "

In due time plaintiff (here) filed an answer and the case was called for trial May 29, 1906. Defendant was not ready and being unable to obtain a witness, dismissed the suit. On the same day, his attorney brought another suit by filing a petition in substance the same as the petition in the former case. Plaintiff answered and the cause came on for trial November 26, 1906. Defendant voluntarily dismissed that suit and immediately brought another of the same character. Again plaintiff answered and prepared for trial. Defendant failed to appear when the case was called March 28, 1907, and it was dismissed for want of prosecution. This ended defendant's attempts to force plaintiff into a compromise. Plaintiff incurred great pecuniary loss in attorney's fees and in the expense incidental to preparing for the trial of the three suits. She lost time from her business and suffered in mind from the unjust accusation. The evidence shows that her grandmother was in good health mentally and physically when she executed the deed; that plaintiff exerted no influence to procure a conveyance of the property and that the deed, in fact, expressed the true intent of the grantor. No objection was made to the competency of plaintiff as a witness as defendant had caused her deposition to be taken in one of the suits.

The facts we have stated are those most favorable to plaintiff and the view of the case they present is the one we shall adopt in disposing of the contention of defendant that the court should have peremptorily

directed a verdict in his favor. The rule has been adopted in this State that an action for damages will lie in cases where the plaintiff has been compelled to defend himself against a civil action of a defamatory nature maliciously brought and maintained without probable cause.

This rule has not been universally recognized in other jurisdictions, but it appears to have the approval of some of the best text-writers. In Bishop on Non-Contract Law, sec. 222, the author thus speaks of it: "The element of defamation of character—slander or libel—is sometimes looked upon as justifying an action for malicious prosecution. It is clearly laid down that slander may be propagated by a false suit. And it has been intimated that in such circumstances an aggrieved person may elect the one of the two remedies he prefers. Not a great proportion of the cases practically assume this aspect, but the doctrine is just in principle, and it is occasionally met with in the books."

In Smith v. Burrus, 106 Mo. l. c. 98, the Supreme Court say: "The authorities are in conflict as to whether a petition states a cause of action which merely alleges that a civil action brought and prosecuted maliciously, and without probable cause, has been terminated in favor of the defendant, many of the authorities maintaining that no cause of action exists unless such civil process be accompanied by arrest of the person or seizure of the property; and that the plaintiff in such original action in contemplation of law is sufficiently punished by the payment of costs. This view has received the sanction of Judge Cooley (Law of Torts (2 Ed.), 217, et seq., and cases cited).

"But there are numerous and able decisions in opposition to this view, and it is difficult to combat the force of the reasoning they employ. It is difficult to see why the right of a plaintiff who as defendant has been sued in a civil action maliciously and without probable cause, and who has been put to great expense

in consequence thereof, should be altered or at all affected merely by the incident of his property having been attached or his person seized; for in either case the damage, the expense and costs of defending a suit whether instituted by *ca. sa.* or attachment or by civil summons would be the same. And it is clear that the recovery of costs would not, under our practice, reimburse him for his attorney's fees, something which and other incidental expenses he does not recover under the English practice.

"The cases on both sides of this subject have been extensively collated and exhaustively reviewed by John D. Lawson in 21 Am. Law Reg. (N. S.) 281, 353, and the conclusion reached that the better doctrine is that which allows an action to be maintained as well where property, etc., has not been seized as where it has. The authorities also are well reviewed in 14 Am. and Eng. Ency. of Law, Tit., Malicious Pros., p. 32, et seq., and notes. Besides, this court in Brady v. Ervin, 48 Mo. 533, adopted the view that an action for malicious prosecution may be maintained where the original action was begun by civil summons alone."

Malice in the prosecution of a defamatory suit may be inferred from the existence of want of probable cause though it is said that the existence of a want of probable cause cannot be inferred from evidence of malice. A good definition of probable cause is that to be found in section 239, Bishop on Non-Contract Law: "Probable cause—or, as the expression oftener is, reasonable and probable cause—is any such combination of facts and proofs as may fairly lead the reasonable mind to the belief (and the person relying on it must believe) that, in the absence of hitherto unknown qualifying or rebutting evidence, the prosecution or other suit ought to be successful."

Where the facts are not in dispute, the question of a want of probable cause is one of law for the court; otherwise it is a mixed question of law and fact. In

the present case, material facts are in controversy and
the first question to confront us is whether the facts
most favorable to plaintiff justify a reasonable infer-
ence that defendant instituted and prosecuted his suits
against plaintiff without probable cause. We think
they do. The warranty deed executed by Mrs. Metz
by its terms conveyed a fee simple title to plaintiff. The
creation of an express trust for the benefit of defend-
ant in connection with that conveyance could be proved
only by writing. It could not be proved by parol. [Sec.
3416, Revised Statutes 1899; Lane v. Ewing, 31 Mo.
75; Heil v. Heil, 184 Mo. 665.] The trust which de-
fendant endeavored to have declared by plaintiff was
an express, not a resulting trust. Therefore, it fell
under the purview of section 3416 and not of section
3417, which relates to trusts arising by implication of
law.

Evidently such was the opinion of defendant's law-
yer who advised that a declaration of trust in writing
be secured from plaintiff. Defendant knew when he
brought the first suit that he could not prove the ex-
istence of an express trust by oral evidence and, fur-
ther, he knew, for his lawyer so advised him, that the
written statement he wrested from plaintiff amounted
to nothing so far as proving a trust was concerned.
Further, he must have known that he could procure
no evidence to support a charge of fraud in the pro-
curement of the deed. His own testimony shows af-
firmatively that he brought the suit, not from a belief
that he had a meritorious cause, but merely in the hope
of forcing his adversary to a compromise. His coun-
sel did not advise him that he had a meritorious case
and, therefore, he is in no position to invoke the pro-
tection of the advice of counsel. He had no reason to
believe that the prosecution of the suits "ought to be
successful in the absence of hitherto unknown qualify-
ing or rebutting evidence," and his entire lack of con-
fidence in the justice of his cause is demonstrated by

his conduct in making no effort worthy the name to prepare for trial and in dismissing the suits when brought to bay only to refile them to the further vexation and annoyance of his niece whose good name he ruthlessly attacked from no better motive than the hope of unjustly gaining some pecuniary advantage to himself. Want of probable cause is abundantly shown by the evidence and as we have said, malice may be inferred from it. Plaintiff was entitled to go to the jury and the demurrer to the evidence was properly overruled.

We find but one error in the record. In the instruction given at the request of plaintiff on the measure of damages, the subject of punitive damages was treated as follows: "And if the jury find that the said F. W. Miller prosecuted his said several actions against plaintiff without probable cause and maliciously as defined in these instructions read to you, then the jury shall separately determine and award in favor of plaintiff and against defendant such additional sum, if any, as punishment for his malicious suits, if you so find, as to the jury may appear just and proper, not however beyond the sum of twenty-seven hundred and forty dollars. The total verdict in plaintiff's favor, if you so find, must not exceed the amount of five thousand dollars."

It will be observed that on finding that defendant prosecuted the several suits maliciously and without probable cause, the direction to assess punitive damages was mandatory. This was clearly erroneous. The awarding of such damages should always be left to the discretion of the jury. The rule applicable is stated by the Supreme Court in the following extract from the opinion in Carson v. Smith, 133 Mo. 606:

"It is insisted by defendant that this instruction is erroneous in that it tells the jury absolutely that plaintiff is entitled to punitive damages. By it the jury are told that if they find from the evidence that the

taking and sale of plaintiff's property, under the attachment against Logan, was malicious, and that the bringing of said attachment was without probable cause, then plaintiff is entitled to punitive damages which the jury will allow him, in addition to the value of the goods.

"The rule announced by recent decisions of this court is that it lies within the discretion of the jury as to whether or not punitive damages will be allowed in any case, and is not a question for the court. [Callahan v. Ingram, 122 Mo. 372; Nicholson v. Rogers, 129 Mo. 136.] This is in accord with the decided weight of authority. [1 Sedgwick on Damages (8 Ed.), sec. 387; 2 Thompson on Trials, sec. 2065; Hawk v. Ridgway, 33 Ill. 473; Railroad v. Rector, 104 Ill. 296; Railroad v. Brooks' Adm'x, 83 Ky. 129; Railroad v. Kendrick, 40 Miss. 374; Railroad v. Burke, 53 Miss. 200; Jerome v. Smith, 48 Vt. 230; Boardman v. Goldsmith, 48 Vt. 403; Snow v. Carpenter, 49 Vt. 426; Bergman v. Jones, 94 N. Y. 51.]

"And the rule is the same in all cases of tort, when wantonness, recklessness, oppression, or express malice is shown. Under such circumstances the jury is allowed to award exemplary damages, not only to compensate the sufferer, but to punish the offender. [Franz v. Hilterbrand, 45 Mo. 121; Engle v. Jones, 51 Mo. 316; Morgan v. Durfee, 69 Mo. 469; Bruce v. Ulery, 79 Mo. 322; Brown v. Plank Road Co., 89 Mo. 152; Fulkerson v. Murdock, 53 Mo. App. 151.] This instruction is clearly erroneous."

For this error, the judgment is reversed and the cause remanded. All concur.

## ON MOTION FOR REHEARING.

JOHNSON, J.—A re-examination of this case convinces us that the decisive issues were fully and correctly decided in the opinion filed and the motions for rehearing are overruled.

In view of the expressed desire of plaintiff to enter a remittitur of the punitive damages, we have decided to set aside the order reversing the judgment and remanding the cause. If, within ten days, the plaintiff shall file a remittitur in the amount awarded by the jury as punitive damages, the judgment will be affirmed; otherwise it will be reversed and the cause remanded. All concur.