State v. Hilsabeck.

The State v. Hilsabeck, *Appellant.*

Division Two, February 4, 1896.

1. **Practice, Criminal**: CONTINUANCE: ABSENT WITNESS: OPINION. A continuance should not be granted because of the absence of witnesses who, if present, would testify to mere matters of opinion about which the jury were competent to draw their own conclusions from the evidence.

2. ———: ———: AFFIDAVITS AND COUNTER AFFIDAVITS. While counter affidavits are generally inadmissible to controvert the truth of statements contained in an application for continuance, the counter affidavit of the witness mentioned in the application may be received to contradict the truth of the allegations in the application respecting such witness.

3. ———: ———: IMPEACHING WITNESS. A continuance will not be granted to give time to procure the attendance of an impeaching witness.

4. ———: ———. The facts stated in the application for a continuance in this case *held* insufficient.

5. ———: ———: AMENDED APPLICATION. The filing of an amended application for a continuance is a matter resting exclusively in the discretion of the trial court.

6. ———: PRACTICE: RAPE: CREDIBILITY OF WITNESSES: INSTRUCTION. An instruction, in a prosecution for assault with intent to rape, declaring that the jury are the sole judges of the credibility of the witnesses and of the weight and value to be given to their testimony, and that in determining such credibility, weight, and value they will take into consideration the character of the witness, his manner on the stand, his interest, if any, in the result of the trial, his relation to, or feeling toward, the defendant or prosecutrix, the probability or improbability of his statements, as well as the facts and circumstances in evidence, does not single out the testimony of the defendant as the subject of comment, but places all witnesses in the case upon the same plane, and is not objectionable.

7. ———: ———: REMARKS OF COUNSEL: APPEAL. Where no objections were made or exceptions saved to alleged improper remarks of counsel for the state in argument, at the time they were made, they will not be considered on appeal.

State v. Hilsabeck.

8. ———: ———: OBJECTION TO EVIDENCE.   Objection to evidence as "incompetent and irrelevant" is too general and is insufficient.

9. ———: ———: INSTRUCTIONS: EXCEPTIONS.   Where the trial court failed to fully instruct the jury in writing upon all questions of law arising in the case, necessary for their information in giving their verdict, the party complaining of such failure should preserve the matter by saving an exception, in order to have it reviewed on appeal.

10. ———: ———: ASSAULT WITH INTENT TO RAPE: SIMPLE ASSAULT.   Where the evidence, including the acts of the accused, show him to be guilty of an assault with intent to rape, an instruction for simple assault should not be given upon his denial of such intent.

11. ———: PLEADING: INDICTMENT.   The word "attest" written before the signature of the prosecuting attorney to an indictment is mere surplusage and should be disregarded.

*Appeal from Barton Circuit Court.*—HON. D. P. STRATTON, Judge.

AFFIRMED.

*Cole & Burnett* for appellant.

(1) The court erred in overruling defendant's application for a continuance. *State v. Lee*, 98 Mo. 609. An application for a continuance by defendant, on account of the absence of material witnesses, which is the first one made, and which meets with the requirements, should be granted. *State v. Bradley*, 90 Mo. 160. Defendant was entitled to have his witnesses. present. *State v. Berkley*, 92 Mo. 41; *State v. Niederer*, 94 Mo. 79; *State v. Dyke*, 96 Mo. 298. And he is entitled to reasonable time after change of venue. *State v. Anderson*, 96 Mo. 241. (2) The second instruction says, "You will take into consideration the character of the witnesses, his or her interest on the stand, his or her interest, if any, in the result of the trial," etc. The jury should be instructed that they "may" not, "should," or "will" take into consideration his interest in the result. *State v. Fairlamb*, 121 Mo. 148; *State v.*

*Cook*, 84 Mo. 49; *State v. Young*, 99 Mo. 676. (3) It was improper to comment on defendant's failure to testify to any particular fact. *State v. Fairlamb*, 121 Mo. 150; *State v. Elmer*, 115 Mo. 401; *State v. Graves*, 95 Mo. 510; *State v. Walker*, 98 Mo. 118; *State v. Mahly*, 68 Mo. 319; *State v. Lee*, 64 Mo. 165. (4) H. H. Blanton, prosecuting attorney, in his closing argument to the jury said that, "Governor Stone had never refused to pardon an innocent man, that had been convicted on perjured testimony, and he never would, either." The remarks objected to were entirely out of the record, unauthorized by the evidence in the case, and prejudicial to the rights of the defendant. *State v. Elmer*, 115 Mo. 404; *State v. Ulrich*, 110 Mo. 350; *State v. Young*, 99 Mo. 666; *State v. Kring*, 64 Mo. 595. (5) The state introduced evidence of the sheriff of Vernon county, Missouri, for the purpose of showing flight, which was admitted over the objection of the defendant. The testimony of defendant and other witnesses for the defense, showed that defendant was not fleeing from arrest, but at the time he was arrested he was in his own room, at his boarding house; and the court, by proper instructions, should have submitted this to the jury. *State v. Taylor*, 118 Mo. 180. (6) Defendant's motion in arrest should have been sustained. The indictment was not signed by the prosecuting attorney and is insufficient in law. *State v. Bruce*, 77 Mo. 193. (7) Defendant having subpoenaed his witnesses in due time was entitled to have compulsory process to secure their attendance. Mo. Const., art. 2, sec. 22. (8) In this state the proof of an assault with intent to commit rape must show that the defendant's intention was to force compliance with his desires at all hazards, regardless of the utmost resistance of the female. The evidence in this case shows no such intent. *State v. Priestly*, 74 Mo. 24; *State v. Owsley*, 102 Mo. 678;

*State v. White,* 52 Mo. App. 289.  (9) It must be remembered that there is a wide difference between an assault with intent to commit rape and an assault with intent, merely, to have an improper sexual intercourse.  *State v. White,* 52 Mo. App. 289, and cases cited.  (10) The court, if it submitted the cause to the jury at all on the record, should have given an instruction on simple assault, and not have left the jury with the impression that the matters sworn to, no matter how they were regarded, made out an assault with intent to commit rape, or nothing.  The evidence warranted an instruction for simple assault, and it was the duty of the court to declare the law.  R. S. 1889, sec. 4208; R. S. 1889, sec. 3950; *State v. Turlington,* 102 Mo. 642; *State v. Taylor,* 118 Mo. 153.

*R. F. Walker,* attorney general, *H. H. Blanton,* prosecuting attorney, *E. L. Moore,* and *M. T. January* for the state.

(1) The trial court did not believe the application for a continuance was made in good faith, viewed in the light of the counter affidavits filed by the state as well as the testimony of some of the witnesses themselves on the hearing of the application, and as the testimony desired was either incompetent, immaterial, or cumulative, the court did not err in overruling said application.  The defendant had already escaped trial at one term of the Vernon court by taking a change of venue.  *State v. Dettmer,* 124 Mo. 426.  Absence of impeaching witnesses is no cause for continuance.  *State v. Howell,* 117 Mo. 307.  (2) There is no merit in appellant's second point, and the cases cited thereunder are wholly inapplicable.  Those cases condemn the use of the word "shall" in the instruction frequently given in criminal cases calling special attention to the testi-

mony of the defendant. No such instruction was given in this case; the instruction attack is usual stereotyped formula employed in both civil and criminal cases, con-cerning the methods of determining the weight to be given to the testimony of the witnesses in general, and approved in innumerable cases, of which the following may serve as an example, in which the court found no error "after a patient investigation of the record." *State v. Smith,* 114 Mo. 406. In the next place, the cases cited condemn the word "shall," whereas, the word here used is "will," which is frequently directory and especially in this connection. Webster—Will. (3) Appellant's third and fourth points are not before this court for review. Statements of prosecuting attorneys can not be preserved by *ex parte* affidavits or in the motion for new trial. *State v. Taylor,* 118 Mo. 163; *State v. Paxton,* 126 Mo. 500; *State v. Jackson,* 126 Mo. 521. Upon this point see *State v. Emory,* 79 Mo. 463; *State v. Duffy,* 124 Mo. 11. No objection was made at the time or exception saved to remarks of counsel for the state. *State v. Welsor,* 117 Mo. 570; *State v. Taylor,* 98 Mo. 240; *State v. Pagels,* 92 Mo. 300. (4) Defendant's fifth assignment (not true in fact) is not properly here for review, as no exception was saved at the time the alleged failure to instruct occurred. *State v. Cantlin,* 118 Mo. 111; *State v. Paxton,* 126 Mo. 514. (5) The word "attest" before the signature of the prosecuting attorney may be considered surplusage. It did not prejudice the substantial rights of defendant. *State v. Kinney,* 81 Mo. 101. (6) The testimony was amply sufficient to support a conviction. *State v. Shroyer,* 104 Mo. 441. It was for the jury to determine, under all the facts and circumstances, what defendant's intent was. *State v. Whitsett,* 111 Mo. 202; *State v. Dusenberry,* 112 Mo. 277; *State v. Banks,* 118 Mo. 121. (7) There was no evi-

dence upon which to base an instruction for simple assault, and no such instruction was asked or exception saved at the time. *State v. DeMosse*, 98 Mo. 340; *State v. Noeninger*, 108 Mo. 166; *State v. Foster*, 115 Mo. 451; *State v. Cantlin*, 118 Mo. 111; *State v. Nickens*, 122 Mo. 607; *State v. Paxton*, 126 Mo. 500. (8) The court very properly admitted the testimony in reference to the bad moral character of the defendant. *State v. Raven*, 115 Mo. 423; *State v. Shroyer*, 104 Mo. 446; *State v. Rider*, 95 Mo. 486; *State v. Rider*, 90 Mo. 63; *State v. Miller*, 71 Mo. 591; *State v. Clinton*, 67 Mo. 391; *State v. Hamilton*, 55 Mo. 523; *State v. Braden*, 58 Mo. 507; *State v. Day*, 13 Mo. 423; *State v. Shields*, 13 Mo. 236. However, the question is not for review here, no proper objection being made. No sufficient reason was assigned. Grounds of objection to evidence must always be specific, or this court will disregard them. *State v. Smith*, 114 Mo. 406; *State v. Moore*, 117 Mo. 395; *State v. Harlan*, 130 Mo. 381. The reason assigned was "immaterial," "incompetent." This court has held that equivalent to no reason at all. *Stone v. Hunt*, 114 Mo. 66. The rule is the same in criminal as in civil cases. *State v. Blunt*, 110 Mo. 322.

SHERWOOD, J.—For an attempt made on the fifth day of July, 1894, to ravish *Anonyma*, a young girl not quite fifteen years of age, defendant was indicted in the county of Vernon, at the November term, 1894. In December following defendant requested and obtained a change of venue and one was awarded to Barton county, where a trial resulted in his conviction and sentence to the penitentiary for the term of five years, and he appeals to this court.

The record proper in this case has been made out very well, but the bill of exceptions, that is to say, that
VOL. 132 mo—23

portion which contains the evidence, has been type-written with a machine so old and decrepit that what purport to be the letters stagger across the page in zig-zag courses, frequently overlapping each other, and frequently altogether omitted, and the result is that the evidence is almost illegible, and has required much time and pains to decipher it.

The testimony of the prosecutrix is to the effect: That on the third of July, 1894, she met the defendant standing in front of the barber shop where he was employed, and as he passed he bowed to her. That on the fourth she took a walk with defendant, and again on the fifth, in the afternoon, they walked together out in the northeast part of Nevada, to a commons, and arranged to go again after supper. That about 6:30 she rode horseback to the commons, where she met defendant, who assisted her from her horse; that she took her riding skirt and spread it upon the ground and they both sat down upon it. That shortly thereafter she took off her hat. The place where they sat down seems to have been somewhat lower, though not a great deal, than the surrounding ground. The prosecutrix testified that after talking a few minutes the defendant pushed her over upon her back, got upon her, and attempted to rape her; that she resisted him and attempted to scream; that defendant attempted to get her clothes up, but she held them; that he only desisted when Wallace and his son and Strader came up.

Anderson testified he was in the barber shop where defendant was employed the evening of the fifth, and that defendant told him he had an engagement with a girl; that he didn't know whether there was anything in it or not, but he was going to try it.

Old man Wallace, his son, Alfred Wallace, and Tom Strader testified that they came upon defendant and prosecutrix that evening upon a low place in

the commons; that when about fifty yards away they heard prosecutrix crying; that they quickened their pace, and when they got nearer they saw defendant on top of the prosecutrix, who was resisting him; that when defendant heard them he rolled off of her; that his pants were unbuttoned and his privates in full view; that he got up and buttoned up his pants; that defendant began cursing them, and old man Wallace knocked him down; that they attempted to catch him, but he ran away, leaving his hat, which they afterward took to the sheriff. Old man Wallace took the girl home and reported the matter to the sheriff and the city marshal.

Several witnesses were introduced by defendant, who testified, that in their opinion, and some of them from their points of view, defendant and the prosecutrix could easily have been seen from various houses in the neighborhood of the locality of the alleged assault. And the testimony of some of the witnesses for the prosecution seems to coincide with those for the defense on this point.

A number of witnesses saw defendant and the prosecutrix sitting together on the commons that evening, none of them however testify that they saw them thus sitting when the attempt was made which caused defendant's arrest.

Long, for defendant, who *"did not work only when he felt like it,"* professes to have lain down within twenty feet of where defendant and the prosecutrix came up and sat down to talk, and saw nothing wrong with the couple, as two men were seen advancing from the *east*, when he left his resting place and returned to town. Underwood, another witness for defendant, saw from his porch, a half a quarter distant, defendant and the prosecutrix seat themselves, and then after a few minutes, when he was standing by his fence, he saw *three*

men come in from the *north* and advance to the place where defendant and prosecutrix were, then for the *first* time he heard talking, and it was then *about dusk;* the defendant and prosecutrix had been seated about fifteen minutes when these men came up, and they were walking pretty fast.

In his own behalf defendant testified; his testimony did not differ materially from that of the prosecutrix, except on the point of his attempted violence, etc., etc.

1. The first ground of contention on behalf of defendant is that his application for a continuance should have been granted. One of the chief grounds on which the application was based was this: "That one Frank Shade, who resides in the city of Nevada, Missouri, is a material witness for this defense, and, if present, would testify that he is well acquainted with the grounds and premises of the alleged assault with intent to rape, and that the place of alleged assault is so open and public, that no sane man would attempt to have sexual intercourse with a woman at said place in daylight, much less attempt the commission of rape." A similar allegation is made as to A. C. Dempsey.

There were, as already seen, a number of witnesses who knew of, and testified to, the character of the ground where the violence was said to have been attempted, but whether at that place a "sane man would attempt to have sexual intercourse, etc., in daylight," was a conclusion for the jury to draw, and not the alleged absent witnesses. Both of these witnesses were present when Shade testified as to the character of the ground, etc., etc. And Dempsey was present when the application for a continuance was heard, and testified that from a conversation had with one of the attorneys for defendant, he understood that his attendance was not needed.

As to Mrs. Carrie Shade (wife of Frank) her affidavit was filed by the state and which showed that as to her the allegations in the application for a continuance were not true. The same may be said of Mrs. Dempsey's affidavit. Although it is not in general admissible to file counter affidavits controverting the truth of the application for a continuance (*State v. Good, ante*, p. 114), yet where the counter affidavit is made by the witness mentioned in the application, then the counter affidavit may be received to controvert the truth of allegations made in the application respecting the affiant witness.

Other witnesses mentioned in the application as being absent were present at the trial and testified. This is true of Campbell and Isbell.

Cruce and others are mentioned in the application as those who would testify as to defendant's reputation for truth and honesty; but as there were plenty of witnesses who testified as to this trait in defendant's character, no harm was done in denying the application so far as concerns them.

As to witness Strevy, by whom it was expected to prove that the reputation of three of the state's witnesses, Wallace and son, and Strader, was bad, it is enough to say that a continuance is not to be allowed merely to secure the attendance of an impeaching witness. *State v. Howell*, 117 Mo. 307.

The testimony of Mrs. Crawford, absent, who, as stated in the application, would testify to her acquaintance with defendant, was this: "That she often kept company with him in girlhood and womanhood and was often with him alone; that his conduct toward her was at all times and under all circumstances that of a gentleman toward a lady." Of course such testimony as the foregoing could not be received.

Equally valueless is the supposed testimony of

Rowan, that he saw a young lady at Nevada, Missouri, whom he was afterward told was the prosecutrix, and she requested him to deposit a letter in the postoffice, addressed to defendant, and this letter is believed to contain an exoneration of defendant.

It is not to be wondered at that the trial court denied such an application as the foregoing. And the grounds justifying the denial of the original application are broad enough to embrace a denial of leave to file an amended one, because the same lack of good faith apparent in the first application would doubtless have characterized the second, and the trial court had the premises before it from which and the right thus to presume. Besides, it is a hazardous practice at best to permit an amended application for a continuance to be filed, and permission to do so rests exclusively in the discretion of the trial court. *State v. Good, supra.*

II. Objection is taken to the second instruction given at the instance of the state:

"The jury are the sole judges of the credibility of the witnesses, and of the weight and value to be given to their testimony. In determining such credibility, weight, and value, you will take into consideration the character of the witness, his or her manner on the stand, his or her interest, if any, in the result of the trial, his or her relation to, or feelings toward, the defendant or the prosecutrix, the probability or improbability of his or her statements, as well as all the facts and circumstances in evidence," etc., etc.

To begin with, the instructions in the cases of *State v. Cook*, 84 Mo. 49, and *State v. Young*, 99 Mo. 666, are directed to the *defendant alone*, viz.: "That in determining what weight you will give defendant's testimony you should consider the fact that he is the party accused and on trial in this cause," etc. 84 Mo. The one given in 99 Mo. is substantially similar to the one

just quoted. In this respect they differ from the one under consideration. The same may be said of *State v. Fairlamb*, 121 Mo. 137. Here, the testimony of defendant is not singled out as the subject of critical inspection and comment; but all the witnesses are placed on the same plane and treated just alike, a feature, as just seen, which does not obtain in the cases cited. And it is to be further noted that the word *"will"* has not an imperative force like the word *"shall."* See Webster, Internat. Dict., under those words. Furthermore, it has never been held that the use of the word "should" or "shall," though their use has been condemned, would constitute reversible error.

III. It is urged that error was committed by the court in permitting improper remarks to be made by the prosecuting attorney.

*a.* No objection was made or exception saved to those remarks and, therefore, they can not be considered. *State v. Pagels*, 92 Mo. 300; *State v. Welsor*, 117 Mo. 570; *State v. Taylor*, 98 Mo. 240.

*b.* But those remarks, if made, were not preserved in the bill of exceptions, and, therefore, can not be considered, for (*c*) *ex parte* affidavits can not supply what the bill of exceptions fails to preserve, and which it alone can preserve. *State v. Hayes*, 81 Mo. 574; *State v. Howard*, 118 Mo. 127; *State v. Musick*, 101 Mo. 260; *State v. Blunt*, 110 Mo. 322; *State v. Brewer*, 109 Mo. 648; *State v. Taylor*, 118 Mo. 153.

IV. It is said that the court admitted the testimony of the sheriff of Vernon county as to his arresting defendant at his boarding house, and this testimony it is said was received over defendant's objection; but such objection was simply that the testimony was *"incompetent* and *irrelevant,"* which amounts to *no objection at all*. *State v. Smith*, 114 Mo. 406; *State v. Moore*, 117 Mo. 395; *State v. Harlan*, 130 Mo. 381.

It is said, further, the court should have instructed the jury on the point whether defendant was fleeing from arrest. If this were so, or if the court failed to obey the mandate of section 4208, Revised Statutes, 1889, and fully instruct the jury on *all* questions, etc., defendant should have preserved the matter by saving an exception to the failure of the court to properly instruct the jury *at the time* such failure occurred. This he did not do. *State v. Cantlin,* 118 Mo. 111; *State v. Paxton,* 126 Mo. 500; *State v. Nelson, ante,* p. 184.

V. The evidence already related is ample on which to base a conviction, and if the jury believed the testimony of the witnesses, that defendant, a man twenty-nine years old and married, with a wife and child, attempted to ravish a girl not yet fifteen years of age, five years, the maximum of the legal penalty, was less punishment than he really deserved.

And his intent to ravish need not be established by his declarations, for in such a case *acts* speak louder than words. These remarks dispose also of the claim that the court should have instructed for *"simple assault."* *State v. Musick,* 101 Mo. *loc. cit.* 271, 272.

VI. The indictment is in usual and approved form. But it is said the indictment is insufficient because it is not *signed* by the prosecuting attorney. But this statement is untrue. The name of the prosecuting attorney appears subscribed to the indictment and the fact that such signature is preceded by the word *"Attest:"* is mere surplusage, and works no detriment. *Utile per inutile non vitiatur.* Judgment affirmed. All concur.