Carson v. Smith.

CARSON v. SMITH et al., *Appellants.*

Division Two, March 17, 1896.

1. **Constitution**: JURY LAW: STATUTE. The constitutionality of the act of the legislature of April 1, 1891 (Laws, p. 172), designating the manner of selecting petit jurors and prescribing their qualifications in certain counties, reaffirmed.

2. **Appellate Practice**: CONVERSION: WAIVER. Where the petition states a cause of action for conversion and the answer and instructions conform thereto, the case will be determined on appeal on the same theory though the petition contains some unnecessary averments.

3. **Contract**: CONVERSION: ESTOPPEL: DAMAGES. In an action for conversion of a stock of goods the evidence disclosed that plaintiff purchased the stock of defendants' debtor; that he subsequently sold it to defendants and repurchased on credit; that by his contract he bound himself to pay the daily receipts to an agent of defendants and for the faithful performance of the contract the parties obligated "themselves to each other in the penalty of $665, as liquidated damages to be paid by the failing party." The defendants afterward attached and sold the goods (under an indebtedness of plaintiff's vendors to them) on the ground that the sale to plaintiff by his vendor was fraudulent. *Held,* such contract did not bar an action for conversion or limit the amount of damages therein.

4. **Attachment**: SEPARATE SUITS: SETTLEMENT. Where separate firms bring separate attachment suits and levy on a stock of goods, a settlement by the defendant with one of said firms, will not extinguish his cause of action, if any he has, against the other.

5. **Fraudulent Representations**: RESCISSION: RESTITUTION. Where one is induced to enter into a contract by reason of false and fraudulent representations, he can rescind the same only by placing the other party *in statu quo.*

6. **Appellate Practice**: INSTRUCTIONS: COMMON ERROR. Error in favor of appellant in giving instructions does not constitute sufficient ground for reversing the judgment.

7. **Conversion:** INTEREST: STATUTE: INSTRUCTION. Under Revised Statutes, 1889, section 4430, it is discretionary with the jury, in actions for conversion, to allow interest on the value of the property converted, and *it is error for the court to give a peremptory instruction allowing such interest.*

8. **Interest:** CONTRACT: DAMAGES. Where interest is allowed, not under contract, but as damages, the rate should be according to the law of the place where the suit is brought.

9. **Conversion:** EXEMPLARY DAMAGES: DISCRETION OF JURY. In an action for the wrongful conversion of goods attached and sold by defendants, it is error to instruct that if the taking and sale were malicious and the bringing of the attachment was without probable cause, plaintiff is entitled to punitive damages which the jury will allow him in addition to the value of the goods, since the giving of punitive damages is discretionary with the jury.

10. ——: ——: ——. In all cases of tort where wantonness, recklessness, oppression, or express malice is shown, the jury may award exemplary damages, *not only to compensate the sufferer, but to punish the offender.*

11. **Evidence.** Evidence of third persons showing the positions of trust plaintiff has held in his county is inadmissible.

*Error to Jackson Circuit Court.*—HON. E. L. SCARRITT, Judge.

REVERSED AND REMANDED.

*James Black* and *Pratt, Ferry & Hagerman* for appellants.

(1) The court erred in holding the jury law of 1891 was constitutional. (2) The plaintiff must be confined to the cause of action sued on. The cause of action stated is not one at law. *France v. Thomas*, 86 Mo. 80; *Schradski v. Allbright*, 93 Mo. 42. (3) A settlement with one of two joint tort feasors extinguishes the entire liability. *Metz v. Soule*, 40 Iowa, 236. (4) There is no necessity in rescinding a contract to return what is worthless. (5) Conflicting and inconsistent instructions are erroneous. *Bluedorn v.*

*Railroad*, 108 Mo. 439. (6) Interest according to the law of another state is only given in suits on contracts when the law is pleaded. *Pauska v. Daus*, 31 Tex. 67; *Templeton v. Sharp*, 9 S. W. Rep. (Ky.) 696; 1 Sutherland on Damages, sec. 367. (7) But where there is no contract for interest, and as in case of conversion it is allowed as part of the damages, then the law of the forum governs. 11 Am. and Eng. Encyclopedia of Law, 421; *Clark v. Child*, 136 Mass. 344; *Shickle v. Watts*, 94 Mo. 410. (8) So we submit since the Kansas law was neither pleaded nor proven, and this was not a suit on a contract calling for interest, the law of the forum must govern and *State ex rel. Robertson v. Hope*, 121 Mo. 34, must reverse this case.

*Beardsley, Gregory & Flannelly* and *W. M. Glenn* for respondent.

(1) The court did not err in refusing to quash the panel of jurors. The act of 1891 referred to was not unconstitutional. All counties in the state at that time having, or which might thereafter have, the population referred to in the act were by its terms brought within the provision. Such legislation is general and not special. *State ex rel. v. Pond*, 93 Mo. 620; *Ewing v. Hoblitzelle*, 85 Mo. 64; *State ex rel. v. Walker*, 25 S. W. Rep. 851; *McClay v. Lincoln*, 32 Neb. 412. See, also, R. S. 1889, sec. 6059; R. S. 1879, sec. 6070. (2) The petition below was for damages for conversion of personal property, an action at law and not a suit in equity. The answer was filed upon this same theory, the instructions were given both for plaintiff and defendants in accordance therewith, and it can not now be contended that the facts stated in the petition justified relief in equity. (3) Plaintiff's instruction number 2 was right. It was the duty of appellants in order to

rescind to place the respondent *in statu quo*. Whatever might be the position of the parties in a suit brought in equity for the rescission of the contract, at law defendants could not claim they had rescinded unless they had placed or offered to place the plaintiff *in statu quo*. *Jarrett v. Horton*, 42 Mo. 275; *Cohn v. Reid*, 18 Mo. App. 123. (4) This is not a case where appellants could rescind without going into a court of equity and bringing in all parties interested in the whole transaction. *Spencer v. St. Claire*, 57 N. H. 9; *Gould v. Bank*, 86 N. Y. 84; *Cobb v. Hatfield*, 46 N. Y. 533; *Bailey v. Fox*, 78 Cal. 389; Benjamin on Sales, sec. 452. (5) The instruction with regard to interest, if it be construed to be a positive instruction to find interest, was right under the Kansas law. *Dodson v. Cooper*, 37 Kan. 346; *Simpson v. Alexander*, 35 Kan. 235. If it be said that the latter case is not properly in evidence here, the court will take judicial notice of it and not send the case back for retrial, when the court will next time be required to give the same instruction on the introduction of this case in evidence. *Campbell v. Wood*, 116 Mo. 96. (6) The instruction given for plaintiff, number 8, upon the question of exemplary damages declares the law correctly. *Paddock v. Somes*, 51 Mo. App. 324; *Maleck v. Railroad*, 57 Mo. 20; *Callahan v. Ingram*, 26 S. W. Rep. 1084; *Fulkerson v. Murdock*, 53 Mo. App. 155. (7) Even though there might be found error in the instructions as to plaintiff's right to recover, the court will not award a new trial, because on the whole record the judgment below was clearly for the right party. It is conceded on all hands that both parties are bound by the contracts of June 16, 1888, unless these two facts concurrently exist: *First*, they were induced by fraud on Carson's part; *second*, defendants rescinded before action brought. The evidence fails to show the first to be true, the

second is not true because upon the evidence offered by defendants themselves the offer was conditional, was not complete and did not propose to place plaintiff *in statu quo*. *Deal v. Cooper*, 94 Mo. 62; *Sebree v. Patterson*, 92 Mo. 51; *Baker v. Shaw*, 35 Mo. App. 611. (8) If there was any error in the instructions given as to the basis upon which the jury should fix the amount of their verdict in case they found for plaintiff,. it was more than covered by the *remittitur*.

BURGESS, J.—Action in the nature of conversion for the wrongful and willful taking and converting to their own use by defendants, at the town of Reid, in the county of Greeley, in the state of Kansas, a stock of general merchandise of which plaintiff claimed to be the owner, and in the possession.

The trial was by the court and a jury, which resulted in a verdict for the plaintiff in the sum of $1,458.50, of which he remitted $395.18, judgment being rendered in his favor for $1,088.32. After an unsuccessful motion for a new trial, defendants appealed to this court.

One of the questions involved which confers jurisdiction on this court is the constitutionality of the act of the legislature under which the jury was summoned before whom the case was tried, being an act entitled, "An act providing for and designating the manner of selecting petit jurors, and prescribing their qualifications," in certain counties of this state, etc., approved April 1, 1891. (Laws, 1891, p. 172).

The facts connected with the transactions out of which this controversy arose are as follows:

On the twenty-fourth day of May, 1888, plaintiff purchased from C. F. Logan a stock of general merchandise, at Reid, Kansas, at the price of $1,700, and in payment therefor gave him goods from the stock

amounting to $36, transferred to him his equity in two tracts of land, valued at $900, $100 by delivering up to Logan a note for that amount executed by him to one H. T. McLaughlin, which Carson held, and by executing his own notes to Logan in the sum of $700. Logan at the time of this sale was indebted to defendants, wholesale merchants at St. Joseph, Missouri, in the sum of $367, and to the firm of Clements, Hulme & Kelly, of Great Bend, Kansas, in the sum of $494.94.

At the time of the sale Logan executed to Carson a bill of sale to the goods, and.took from him an instrument of writing, providing that if Carson failed to pay any of the notes given for the purchase price of the goods, when due, Logan might assist in selling, and all proceeds arising from their sale should be paid to him. Carson never paid anything more than $36 to Logan on the goods.

On the sixteenth of January, 1888, J. L. Peck, representing defendants, and Kelly of the Kansas firm, went to Reid to see Logan about his indebtedness to them, and learned from him and Carson, that Carson had purchased the goods, and the terms of the sale. An agreement was then entered into between Logan, Carson, and the creditors, through their representatives who were present, that Logan should return to Carson the notes calling for $700, and the papers accompanying the same. Carson represented that he was the absolute owner of the stock of goods, and defendants claim that, on the faith of his representations, they, the Kansas creditors, and Logan, agreed with Carson that he should, to the extent of $665, which he then owed Logan, assume the indebtedness of Logan to said creditors.

Carson then executed to said creditors a bill of sale for said stock of goods, they executing to him at the same time an instrument of writing, providing that the

title to the goods should revert to Carson upon the payment by him to them of said $665, with interest. This writing also provided, that sales should be made for cash only, and that all moneys received from sales, after paying therefrom such sums as might be necessary to replenish the stock should be paid to said Peck as a credit upon the $665. This writing also provided that for any violation of its terms by either party thereto, the penalty should be fixed at $665, as liquidated damages to be paid by the party failing to comply with its terms. Carson remained in possession of the goods. He testified that he paid Peck from the sale of the goods at one time $18, and at another $40. The $40 payment was denied by Peck.

About the last of June, Peck, becoming satisfied that the sale from Logan to Carson was fraudulent on Logan's part, went to Carson and offered to rescind the contract of June 16, but Carson refused to do so.

Defendants then sued out an attachment against Logan and had the goods attached as his property. A similar suit was also instituted by the Kansas creditors which was dismissed. The goods were sold under defendants' suit against Logan, and purchased by them at the price of $500.

The first proposition with which we are confronted is the constitutionality of the jury law under which the jury were selected who sat upon the trial of the cause. It has been so often held by this court that the law is constitutional, that it is unnecessary to do more than refer to some of the adjudicated cases on the subject, to wit: *Dunne v. Cable R'y Co.*, 131 Mo. 1; *Sherwood v. Grand Avenue R'y Co.*, 132 Mo. 339.

It is contended by defendants that plaintiff's cause of action, if any he has, is by proceeding in equity and not for conversion.

While there are some unnecessary allegations in the petition, it clearly states a cause of action for conversion, and the answer and instructions were upon the same theory, hence, it must be heard and determined by this court on that theory.

Defendants and Clements, Hulme & Kelly, had purchased the goods from Carson, by and with the knowledge and consent of Logan, who had previously sold them to Carson. They were then sold back to Carson for the same price, $665, which was, as has been said, the amount of Logan's indebtedness to them. By this contract of sale Carson bound himself to keep a daily record of all sales made by him from the stock of merchandise, and to pay the same over to Peck, as the agent of defendants and Clements, Hulme & Kelly on the regular trips of said Peck to Reid. And for the true and faithful performance of the terms of the agreement each party bound "themselves to each other in the penal sum of $665 as liquidated damages, to be paid by the failing party." Defendants now insist that if plaintiff's remedy is not in equity, that it is for breach of the contract.

Plaintiff was the owner of and in possession of the goods, and by their seizure and taking away against his will at the instance of defendants under attachment sued out by them against Logan they became tort feasors. Plaintiff did not by this contract debar himself from the prosecution of any action that he might have against defendants for wrongful conversion of the goods, or limit the amount of damages to which he might be entitled to recover in such a suit to the sum of $665 or any other sum. No such provision is contained in the contract. But even if there was, plaintiff had the undoubted right to treat the wrong as a tort and prosecute his action as for conversion.

2 Add. Torts, chap. 22, sec. 1; Bliss on Code Pleading [3 Ed.], sec. 14.

It is also argued that Carson first broke the contract by selling on credit, and although defendants converted the goods he is not entitled to the penalty fixed by the contract. It is only necessary to say with respect of this contention that the action is not for the penalty, hence no such question is involved in this litigation.

Defendants and Clements, Hulme & Kelly were not joint tort feasors in the conversion of the goods, but defendants were. One firm had no interest whatever in the suit of the other, and plaintiff could not for that reason have maintained his action for conversion against them jointly. They acted separately and independently of each other and for the benefit of the respective firms. While one may have been guilty of a tort, the other may not have been, hence any settlement that plaintiff may have made with Clements, Hulme & Kelly, did not serve to extinguish his cause of action, if any he had, against the other.

Nor was it in defendants' power to rescind the contract entered into with Carson without his consent, upon discovering that the sale from Logan to him was fraudulent on the part of Logan, without placing Carson *in statu quo*.

The evidence clearly shows that plaintiff paid to Peck money arising from sales of goods amounting to at least $18 which defendants never offered to return to him. When a person is induced to enter into a contract by reason of false and fraudulent representations, he can only rescind the same by placing the adverse party *in statu quo*. He must return whatever of value he has received on the contract. *Och v. Railroad*, 130 Mo. 27, and authorities cited. See, also, *Kimball v. Cunningham*, 4 Mass. 502; *Norton v. Young,*

3 Greenl. 30; *Weed v. Page*, 7 Wis. 503; *Robinson v. Siple*, 129 Mo. 208.

The contract by which the goods were resold to Carson, never having been rescinded, it is immaterial whether the sale from Logan to him was made in fraud of the latter's creditors or not. Carson claims title directly from defendants, and it does not lie in their mouths to say that a sale under which they acquired the property was fraudulent as to their vendee, so long as their contract of sale of the property to him remains unrescinded.

Therefore, the instructions with respect of the *bona fides* of the sale from Logan to Carson were unauthorized by the facts in proof, but as the evidence as presented by the record clearly shows Carson to have been the owner of the goods in question, and that defendants wrongfully converted them to their own use, the case should not be reversed because of such instructions.

Plaintiff's second instruction seems to be without serious objection, but defendants' sixth instruction is clearly in conflict with it and erroneous. Moreover, it was not warranted by the evidence. This, however, is an error in favor of defendants, of which they can not complain.

Plaintiff's fourth instruction is criticised in that it tells the jury that, if they find for plaintiff, he is entitled to recover of defendants whatever sum they find from the evidence said property was reasonably worth, with interest at six per cent per annum from July 2, 1888, the time they were levied on by the sheriff.

As a general rule, in actions for conversion, in order to give the injured party full indemnity, interest is allowed on the value of the property from the date of its conversion (*Watson v. Harmon*, 85 Mo. 443; 1 Sutherland on Damages, [2 Ed.] sec. 355, and author-

ities cited), but in this state, by whose laws that question must be governed in this case, it is entirely within the discretion of the jury as to whether interest will be allowed on the value of the property or not. Sec. 4430, Revised Statutes, 1889; *State ex rel. v. Hope*, 121 Mo. 34. "Where interest is allowed, not under contract, but as damages, the rate is according to the laws of the place where the suit is brought." 11 Am. and Eng. Encyclopedia of Law, 421; *Shickle v. Watts*, 94 Mo. 410; *Clark v. Child*, 136 Mass. 344; *Goddard v. Foster*, 17 Wall. 123.

Criticism is also made on plaintiff's fifth, sixth, and seventh instructions, but they do not seem to us to be subject to the objections urged against them.

With respect to the right of plaintiff to punitive damages in the event the jury found for him, the court instructed the jury as follows:

"8. If you believe from the evidence that the property in controversy was the property of plaintiff and that the same was taken from him and sold by means of proceedings commenced by an attachment in a suit against one C. F. Logan, and if you further believe from the evidence that such taking and sale of said property by such means was malicious on the part of defendants and such proceedings without probable cause for their bringing or maintenance, *then plaintiff is entitled to punitive damages in addition to the value of the property so taken from him and sold;* and you will allow him in addition to the value of the goods and property so taken such further sum as not to exceed $1,000, as you believe will justly punish the defendants for their wrongful acts, if any, in the premises."

It is insisted by defendants that this instruction is erroneous in that it tells the jury absolutely that plaintiff is entitled to punitive damages. By it the jury are told that if they find from the evidence that

the taking and sale of plaintiff's property, under attachment against Logan, was malicious, and that the bringing of said attachment was without probable cause, then plaintiff is entitled to punitive damages which the *jury will* allow him, in addition to the value of the goods.

The rule announced by recent decisions of this court is that it lies within the discretion of the jury as to whether or not punitive damages will be allowed in any case, and is not a question for the court. *Callahan v. Ingram*, 122 Mo. 372; *Nicholson v. Rogers*, 129 Mo. 136. This is in accord with the decided weight of authority. 1 Sedgwick on Damages, [8 Ed.] sec. 387; 2 Thompson on Trials, sec. 2065; *Hawk v. Ridgway*, 33 Ill. 473; *Railroad v. Rector*, 104 Ill. 296; *Railroad v. Brooks' Adm'x*, 83 Ky. 129; *Railroad v. Kendrick*, 40 Miss. 374; *Railroad v. Burke*, 53 Miss. 200; *Jerome v. Smith*, 48 Vt. 230; *Boardman v. Goldsmith*, 48 Vt. 403; *Snow v. Carpenter*, 49 Vt. 426; *Bergmann v. Jones*, 94 N. Y. 51.

And the rule is the same in all cases of tort, when wantonness, recklessness, oppression, or express malice is shown. Under such circumstances the jury is allowed to award exemplary damages, not only to compensate the sufferer, but to punish the offender. *Franz v. Hillerbrand*, 45 Mo. 121; *Engle v. Jones*, 51 Mo. 316; *Morgan v. Durfee*, 69 Mo. 469; *Bruce v. Ulery*, 79 Mo. 322; *Brown v. Plank Road Co.*, 89 Mo. 152; *Fulkerson v. Murdock*, 53 Mo. App. 151.

This instruction is clearly erroneous.

The evidence of J. H. McLaughlin with respect to the positions of trust plaintiff had held in his county, was wholly immaterial and should have been excluded. It is in the discretion of the court in the examination of a witness as preliminary to his examination in chief to permit him to be questioned with respect to his

occupation, residence, as well also as to positions
then or previously held by him, in order that the triers
of the facts may estimate the weight to be given to
his evidence, especially when unacquainted with the
witness, but we know of no authority which justifies
such inquiries of other witnesses. This, however,
would not justify a reversal of the judgment.

The judgment is reversed and the cause remanded
to be tried in accordance with the views herein ex-
pressed. GANTT, P. J., and SHERWOOD, J., concur.

