## G. E. GEARY, Respondent, v. ST. LOUIS AND SAN FRANCISCO RAILROAD COMPANY, Appellant.

### Springfield Court of Appeals, July 28, 1913.

1. PUNITIVE DAMAGES: Discretionary With Jury: Instructions. It lies within the discretion of the jury as to whether or not punitive damages will be allowed in any case; and in an instruction submitting the question of punitive damages, the court should clearly inform the jury of this discretionary power.

2. INSTRUCTIONS: Punitive Damages. In an action against a railroad company for an assault committed by the company's station agent, an instruction that "if the assault was willfully and maliciously made, you *will* assess a further sum by way of punitive damages," *held* improper and erroneous as being mandatory and not properly advising the jury that the allowance of punitive damages was in their discretion.

3. APPEAL AND ERROR: Bill of Exceptions: Appellate Court Confined to. As to the contents and form of an instruction,

the appellate court is confined to the bill of exceptions and must be guided thereby.

4. **PUNITIVE DAMAGES: Instructions: Reversible Error.** An instruction on punitive damages which does not leave the jury free to exercise its discretion is reversible error.

Appeal from Howell County Circuit Court.—*Hon. W. N. Evans*, Judge.

AFFIRMED (conditionally).

*W. F. Evans* and *W. J. Orr* for appellant.

*H. D. Green* and *O. F. Wayland* of counsel.

(1) Instruction No. 2 given on the part of the plaintiff is erroneous in that it is misleading and, impliedly, at least, allows double damages. Trigg v. Railroad, 74 Mo. 147; Railroad v. Birney, 71 Ill. 391; Frances v. Transfer Co., 5 Mo. App. 7; Spohn v. Railroad, 116 Mo. 632; Connell v. Western Union Tel. Co., 116 Mo. 46; Deming v. Railroad, 80 Mo. App. 152; State v. Workman, 75 Mo. App. 454. (2) Instruction No. 4 is erroneous in that it invades the discretion and province of the jury; second, it refers the jury to the *ad damnum* clause of the petition as the limit of their finding, and third, it does not correctly state the purpose for which exemplary damages may be allowed. Nicholson v. Rogers, 31 S. W. 260; Carson v. Smith, 133 Mo. 617; Carmody v. Transit Co., 99 S. W. 497; Topolewski v. Packing Co., 143 Wis. 52, 126 N. W. 554; Meighan v. Terminal Co., 51 So. 775; Fink v. Thomas, 66 S. E. 650; Jordon v. Tel. Co., 75 Mo. App. 1014; Carpenter v. Hyman, 66 S. E. 1078; Railroad v. Conly, 124 S. W. 861; Fordyce v. Nicks, 58 Ark. 140; Willis Brothers v. McNeil, 57 Texas, 478; Bryan v. Acee, 27 Ga. 92; Railroad v. Austin, 69 Ill. 428.

*William T. Nardin* and *M. E. Morrow* for respondent.

*Wilfley, Wilfley, McIntyre & Nardin* of counsel.

(1) Where the injury is connected with circumstances of malice, insult or inhumanity, mental pain and humiliation may be taken into account as separate elements of damage, even though not connected with physical injury. Trigg v. Railroad, 74 Mo. 147. (2) Instruction No. 4 does not direct the jury to allow punitive damages, but fairly leaves it to the discretion of the jury to allow such damages. State v. Hilsabeck, 132 Mo. 348; Street Railway v. Zeiger, 182 Ill. 9; 40 Cyc. 950.

GRAY, Special Judge.—This suit was instituted to recover damages for an assault made on the plaintiff by the defendant's station agent at the town of Pomona, on the 11th. day of October, 1911. The pleadings and evidence authorized a verdict for both compensatory and exemplary damages, and the jury returned such a verdict, assessing the plaintiff's compensatory damages at the sum of $750, and his exemplary damages at $2000.

While appellant assigns several reasons for a reversal of the judgment, the only one seriously urged relates to the instruction as to exemplary damages. The instruction reads: "The court instructs the jury that if you believe and find from the evidence that the assault and attack upon plaintiff by the agent of defendant, if you find there was such an assault, was wilfully and maliciously made, that is to say, if it was intentional and without just cause, you will assess a further sum by way of punitive or exemplary damages against defendant," etc.

The counsel agree that it lies within the discretion of the jury as to whether or not punitive damages will

be allowed in any case, and, therefore, the issue is further limited to whether the instruction does leave the matter to the jury's discretion.

The rule seems to be that when an instruction is given as to punitive damages, the court should clearly tell the jury that the giving of such damages is a matter of discretion. [Hauser v. Steigers, 137 Mo. App. 560, 119 S. W. 52; State ex rel v. Fidelity & Deposit Co., 94 Mo. App. 184; Callahan v. Ingram, 122 Mo. l. c. 373, 26 S. W. 1020; Ill. C. R. R. Co. v. Houchins, 1 L. R. A. (N. S.) 375; Johnston v. Wells, 112 Mo. App. 557, 87 S. W. 70; Chesapeake & O. Ry. Co. v. Conway, 124 S. W. 861.]

In Callahan v. Ingram, supra, our court said: "Exemplary damages are given by way of punishment, and the jury should be so instructed thereon as to leave no doubt on the subject."

In State ex rel. v. Fidelity & Deposit Co., supra, the question of the right to recover interest was for the jury, and the instruction read: "The court instructs the jury that if you find for the plaintiff you should return a verdict for the amount of the balance due on the note, not exceeding the value of the stock of goods, furniture and fixtures levied upon by the sheriff under the execution, on the twenty-seventh day of August, 1900, to which you may add six per cent interest from that date to the present time." While the court affirmed the judgment, yet, relating to this instruction, it said: "The instruction is not as definite and full as it should have been in calling the attention of the jury to the fact that the allowance of interest was in their discretion."

In Hauser v. Steigers, supra, the jury were told if they found a verdict for plaintiff in estimating his punitive damages, they might consider defendant's wealth, etc. In speaking of this instruction Judge GOODE said: "In itself and unless the meaning was sufficiently clarified by other instructions, this charge

was suggestive of the notion that punitive damages must accompany a verdict for plaintiff; which, of course, was not the law."

In Illinois Central R. R. Co. v. Houchins, supra, the court said: "When an instruction is given as to punitive damages the court should clearly tell the jury that the giving of punitive damages is a matter of discretion."

I believe the rule is correctly and very clearly stated by Judge ELLISON in Johnston v. Wells, supra, as follows: "It is proper to inform the jury of their province to allow such damages if they see fit to do so, but there should not be a direction given them which, fairly interpreted, withdraws such discretion and makes the allowance mandatory."

Believing that this statement of Judge ELLISON's correctly declares the law, there only remains for consideration the one question: Does the instruction, when fairly interpreted, withdraw such discretion from the jury? In determining this question, no unusual or technical meaning of the word "will" should be resorted to.

In State ex rel. v. Hope, 121 Mo. 34, 25 S. W. 873, the question of interest was in the discretion of the jury, and the court gave an instruction, which, on the measure of damages, read: "If you believe that afterwards, the defendant Hope, as sheriff of Jackson county, under and by virtue of said writs of attachment against said Schneider, levied upon and took said property or any part thereof, then you will find in this action for the plaintiff, and assess his damages at the value of the property so taken, together with interest at the rate of six per cent per annum," etc. The court held that the instruction, as framed, was erroneous, because it interfered with the discretion of the jury regarding interest.

In Carson v. Smith, 133 Mo. 606, 34 S. W. 855, the instruction read: "Then plaintiff is entitled to puni-

tive damages in addition to the value of the property so taken from him and sold; and you will allow him in addition to the value of the goods and property so taken such further sum as not to exceed $1000, as you believe will justly punish the defendants for their wrongful act," etc.   In condemning this instruction the court said:  "By it the jury are told that if they find from the evidence that the taking and sale of plaintiff's property, under attachment against Logan, was malicious, and that the bringing of said attachment was without probable cause, then plaintiff is entitled to punitive damages which the *jury will* allow him, in addition to the value of the goods."   By putting the words "jury will" in italics, the court undoubtedly intended to emphasize the fact that the word "will" in the instruction was erroneous.

In Di Palma v. Weinman, 103 Pac. 782, 24 L. R. A. (N. S.) 423, an instruction was given as follows:   "If you find the plaintiffs suffered any damage, you will allow interest at the rate of six per cent per annum on the amount of property injured or destroyed."   It was held that the instruction was erroneous because the question of interest was in the discretion of the jury, and that the instruction deprived the jury of that discretion.

In North Chicago R. R. Co. v. Zieger, 182 Ill. 9, 74 Am. St. Rep. 157, the court said:  "To tell a jury that, if they find from the evidence the plaintiff has, by a preponderance of the evidence, proved the material allegations of his declaration, their verdict 'will' (instead of 'may') be in his favor, is to state the law, and cannot, by any fair understanding of words, be an invasion of the province of the jury.   'May' could not, in such connection, properly be understood in the alternative, as 'may' or 'may not', for, under the premise of the instruction, there was but one proper thing for the jury to do, and that was to find for the plaintiff."

The other instructions given in behalf of plaintiff, plainly show the meaning the parties intended the word "will" should have in the instruction under consideration. The first instruction reads: "The court instructs the jury that if the verdict is for the plaintiff, and you allow him both compensatory and exemplary damages, you will state in your verdict the amount allowed on account of each class of damages." Our statute requires that the verdict of the jury state separately the compensatory and punitive damages allowed. Can it be said that it was the intention of plaintiff that the word "will" used in this instruction, should be understood by the jury to mean that it was in their discretion to assess the damages separately?

Plaintiff's second instruction reads: "If your verdict is for the plaintiff, you will assess his compensatory damages at such sum as you may believe and find from the evidence," etc. In Thompson on Trials, 2d volume, beginning at page 477, numerous precedents of instructions are given for compensatory damages, and it will be noticed that the word "will" is used in nearly every instance.

Counsel for plaintiff earnestly insisted in the trial court and in this court, that their instruction as given, contained the word "may" where the word "will" now appears; but this question was before the trial judge at the time he approved the bill of exceptions, and the bill, as approved, contains the instruction as copied herein, and of course, we are confined to the bill of exceptions and must be guided absolutely by it.

Having reached the conclusion that the instruction as given was erroneous, can the judgment be affirmed on the theory that, under the evidence, the error was harmless, and that the jury would have returned a verdict for $2000 punitive damages, if the word "may" had been used instead of "will," in the instruction?

In Nicholson v. Rogers, 129 Mo. 136, 31 S. W. 260, the plaintiff sued in slander, and the case was an aggravated one. In reversing the judgment the court said: "The instruction undoubtedly directs the jury, as though defendant was entitled to punitory damages as a matter of legal right. . . . An instruction should have been so framed as to leave the jury free to exercise their discretion. . . . This is undoubtedly a case in which exemplary damages might have been allowed in the discretion of the jury, but not as a matter of absolute right. The instruction in this particular was erroneous. It may have greatly influenced the jury. For this error the judgment is reversed and the cause remanded."

As I understand our Supreme Court decisions, they plainly declare to give an instruction that tells the jury to allow, or that plaintiff is entitled to, punitive damages if they find a certain state of facts to be true, is reversible error.

This suit was not instituted against the station agent, who, it is claimed, committed the assault on plaintiff, but against the corporation in whose employ the agent was at the time, and I am not prepared to say that the jury, if properly instructed as to their discretion in the matter, would have returned a verdict against the employer for $2000 punitive damages.

The premises considered, if the plaintiff will, within ten days, remit the sum of $2000 allowed as punitive damages, the judgment will be affirmed; otherwise, it will be reversed and the cause remanded. *Sturgis, J.*, concurs; *Robertson, P. J.*, dissents in separate opinion.

## DISSENTING OPINION.

ROBERTSON, P. J.—The plaintiff, who was recovering from typhoid fever and who weighed twenty-five pounds less than his usual weight, applied at the ticket window of the office of the defendant at Pomona,

then temporarily in charge of the agent's wife, for a ticket to Columbia, whereupon she informed him that they did not sell tickets to that place. Plaintiff expressed surprise at that because, as he told her, he had bought a ticket from Columbia to that point. She said Pomona was not a coupon office and if he had gone to West Plains, "like he ought to," he could have gotten a ticket to Columbia. He then asked for a ticket to Springfield, which she gave him, and she charged him an amount, which, he said to her, would make it cost him a dollar extra and she said she thought not. Plaintiff testified that he did not say anything offensive, nor in an offensive manner, to the agent's wife and that she did not appear to be at all offended at any remarks he had made. The plaintiff then stepped outside of the station onto the platform where he stated to some one standing there that he "was going to get stung because this was not a coupon office," and that he had just found out what a coupon office was and started to explain to this party, as the agent's wife had to him, stating. "This little dinky station can't sell tickets off its own line." Thereupon the agent, F. W. Taylor, who chanced then to be on the platform within hearing distance and who was a man weighing about two hundred pounds, approached the plaintiff and, in the presence of others there waiting for the train, commenced cursing him and calling him vile names, stating that he was going to "thrash" him. Plaintiff told him he was as big as three of him and that he was just out of the hospital and did not have the strength of a twelve-year old boy, and the agent then said, "I will put you back into the hospital for a long time to stay," and struck him with his fist on the side of the face knocking him across the railroad and over between the siding and the main track, where plaintiff was picked up unconscious, bleeding at the mouth. After plaintiff was picked up by some of the bystanders and had regained consciousness, he

told the agent he would see that he paid for it and then the agent told him to "shut up" or he would hit him again. Plaintiff boarded the train and went to Springfield and from there to Ft. Scott, Kansas, where he was to change to the. M. K. &. T. railroad, and the plaintiff testifies that when he got to Ft. Scott he was sick and had to take a cab and go to a hotel and go to bed; and that he also had to lie down most of the way from Pomona to Springfield. He also testifies that his mouth was bleeding all of the time and the next morning his lips were stuck together and he had to apply hot water to get his mouth open, that his teeth were loosened and that for a week his face was in bad condition and that at the time of the trial it bothered him when he ate anything on that side.

At the time of the trial the agent was yet in charge of this same station and was the only witness who testified in behalf of the defendant as to his theory of the altercation, and he, in a way, seeks to justify the assault by claiming that the plaintiff had unreasonably criticized his wife and that he was thereby provoked to the assault; but the agent's wife was not a witness nor were there any witnesses who corroborated the agent on this proposition nor as to what he says took place just before the assault. The defendant did offer a few witnesses who testified that the attack made by the agent on plaintiff was not as vicious and brutal as testified to by the plaintiff. One of the witnesses who testified in behalf of the defendant did not by any means corroborate the agent as to how the difficulty arose.

The rule announced in the majority opinion in this case that exemplary damages are matters that rest wholly within the judgment of the jury and that the jury should, as to such damages, be left free to act, I do not question. But I am unwilling to agree that this case should be reversed and remanded for a new trial on account of the use of the word "will" instead of

"may" in plaintiff's instruction No. 4. It is evident to my mind that this alleged error results in no prejudice to the defendant.

If we are to say in this case that it is impossible to ascertain whether or not the jury was misled by the use of the word "will," except to give the word its correct meaning, then I suggest that the word has not an unequivocal imperative meaning. There are credible authorities to the effect that the word does not imply a command or direction as here used. For instance, one author says that, "In simple, direct statements, to express mere futurity, use *shall* in the first person and *will* in the second and third; to express volition, promise, purpose, determination, or action which the speaker means to control, use *will* in the first person and *shall* in the second and third persons." And in the case of State v. Hilsabeck, 132 Mo. 348, 359, 34 S. W. 38, it is noted that the "word '*will*' has not an imperative force like the word '*shall*.'" It is not at all probable that the jury in this case anticipated that they would be disregarding the court's instruction if they failed to assess any punitive damages. It occurs to me that if the jury were not favorable to the proposition of allowing punitive damages, but were forced there by the court's instruction complained of, that they would not have allowed two thousand dollars therefor. Even adopting the construction contended for by the defendant in this case, there was no amount fixed by the instruction for the jury to assess and, if we construe the instruction as insisted upon by defendant, the request of the court would have been met by the allowance of one dollar punitive damages, so that for all above that amount the jury acted independently of the court.

The cases cited in the majority opinion concerning interest do not appeal to me as applicable to this case, because in those cases the question of interest rested in the discretion of the jury and they were directed

in a manner that destroyed their discretion. The instruction which directs them to allow interest, the rate of which is fixed by law, is equivalent to a direction to find for a sum certain. The principle, I admit, so far as concerns discretion, is the same in those cases as in this case, but a verdict in such cases could give no indication of the state of mind of the jury as to the allowance nor be taken as an index to their inclination.

The instruction condemned in the case of Carson v. Smith, 133 Mo. 606, 616, 34 S. W. 855, tells the jury that the plaintiff is *entitled* to punitive damages and that the jury *will allow* him such.

In the case of Houser v. Steigers, 137 Mo. App. 560, 566, 570, 119 S. W. 52, where an instruction is complained of, it was said that the instruction "was suggestive of a notion that punitive damages *must* accompany a verdict for plaintiff," whereas, in the case at bar, at the request of the defendant, the jury were advised that they could not allow the plaintiff punitive damages if they found certain facts. That case does not strike me as unlike this case, and the judgment there involved was affirmed.

The Supreme Court in the case of State v. Hilsabeck, supra, 132 Mo. 348, 359, 34 S. W. 38, refused to reverse a criminal case on account of the use of the word "will" where it was contended the word "may" should have been used.

An examination of the case of Nicholson v. Rogers, 129 Mo. 136, 31 S. W. 260, cited in the majority opinion to support the harmful error theory there advanced, will disclose that the jury were there instructed (page 139) that they *must* assess an amount of damages in behalf of plaintiff to punish the defendant for his wrongful and malicious conduct.

The fact that this suit is against the employer instead of against the agent suggests no reason to me for holding that the error complained of was detrimental to the defendant. That portion of the judgment af-

firmed convicts the agent of an unlawful and aggravated assault. There was some testimony tending to prove that this agent had been in other fights. The defendant saw fit to retain the agent in authority at this same station from the date of his outrages on plaintiff until the date of the trial, more than one year later. It developed at the trial that the defendant, a few months after the assault, had taken the written statements of the plaintiff and one of his witnesses, so that it cannot be said that the defendant was ignorant of the true facts until they were disclosed at the trial. I think the defendant was as culpable as its agent and that the jury properly administered punishment to it for keeping this character of a man in charge of its station to favor or combat its patrons according to his caprice.

Instruction No. 3, given at the request of the defendant, reads as follows: "In this case if you find the plaintiff was assaulted and beaten by the defendant's agent, still you cannot assess any damages by way of punishment, or what is termed in these instructions as punitive damages, if you find that plaintiff sought, brought about or voluntarily entered into the difficulty which provoked the assault. One cannot claim damages for humiliation and insult when he, by his own voluntary misconduct, brings on a difficulty in which he receives bodily injury.

"You are instructed that if you find that plaintiff was assaulted by the defendant's agent, still if he voluntarily entered into or brought about the difficulty in which he was assaulted, you may take this into consideration in assessing any damages for the plaintiffs, and you then cannot allow anything as punitive damages or for humiliation or insult."

By this instruction I think the defendant, impliedly at least, recognizes the fact that the jury would be induced by the facts to enter into the question of and be disposed to give punitive damages and, therefore, it requested and obtained the instruction that if the

plaintiff sought, or brought about or voluntarily entered into the difficulty that he was not then entitled to punitive damages. This instruction, however, does not, as I understand the decisions, properly declare the law. [Neuer v. Railroad, 143 Mo. App. 402, 407, 127 S. W. 669.]

This is a case, in which the judgment, to my mind, is so manifestly for the right party that it presents an instance wherein a court should obey the mandate of our Legislature (section 2082, R. S. 1909) and not reverse the trial court unless it shall believe, which I do not in this case, that error was committed in the trial affecting the merits of the case. I think the judgment of the trial court should be affirmed for both the compensatory and punitive damages.